1821.

MONELL
v.
MONELL.

---

J. MONELL and others *against* G. MONELL and others.

If two trustees, executors, or guardians, join in a receipt for money, it is presumptive evidence that the money came equally into the possession, or under the control, of both; and there must be direct and positive proof to rebut the presumption. The *answer* of the defendants is not evidence sufficient for that purpose, or to avoid or contradict the language of the receipt.

Where, by any act or agreement of one trustee, or executor, money gets into the hands of his co-trustee, or co-executor, both are answerable for it.

Where the responsibility of a trustee or guardian, or that of his sureties, becomes precarious, the Court, on a bill filed by the infants, for that purpose, will order the moneys in the hands of the trustee or guardian, to be brought into Court, to be put out for the benefit of the parties interested, or that further and sufficient security be given by the trustees or guardians.

THE bill, filed by five of the children of *James Monell*, three of whom were infants, stated, that their father died *January* 3d, 1814, intestate, and seized of a large real and

*June 30th.*

1821.

MONELL
v.
MONELL.

personal estate, and that they and their three brothers and three sisters, whom they named, were his heirs at law. That on the 4th of *February*, 1814, letters of administration on their father's estate, were granted by the surrogate of *Orange* county, to the defendant, *George Monell*, and to *John W. Nicoll*, and *Samuel Monell*, who took upon themselves the administration of the estate. That the surrogate, on the 1st day of *March*, 1814, appointed the defendant *G. Monell* and *Peter Milliken*, guardians for the plaintiffs *George*, *Hiram*, and *Gabriel*, who were then under fourteen years of age, and of the other two plaintiffs, who were then above fourteen and under twenty-one years of age, by their choice and election. That the guardians gave bonds, with *James R. Boyd* and *Philip Miller*, the other two defendants, as their sureties, for the faithful performance of their duties as guardians, and to render account, &c. That the said guardians, on the 1st of *March*, 1814, received for each of the plaintiffs, out of the personal estate of their deceased father, 291 dollars and 88 cents. That the defendant *G. M.*, one of the guardians, became insolvent, about the 1st of *May*, 1817, and was discharged from all his debts under the insolvent act, and still is insolvent. That *J. R. Boyd*, one of the sureties has since become involved in debt, and all his property has been sold by the sheriff to pay his debts. That the defendants *G. M.* and *Milliken* have held the said moneys since they were received by them, and the plaintiffs had applied to them for an account and payment, according to their respective rights, without effect. The bill further stated, that in a suit for partition, between the plaintiffs and their brothers and sisters, commenced in *September* term, 1814, in the *Orange* Court of Common Pleas, of the lands of their deceased father, it was adjudged that the land should be sold ; and a sale thereof having been made accordingly, the Court of C. P. in *September*, 1818, ordered, that after deducting the costs, the residue of the moneys arising from the sale of the land, being five thousand seven hundred and

five dollars and seventy-eight cents, should be paid to the parties in the suit, according to their respective rights. That the said Court, in *September*, 1818, also directed the commissioners who had been appointed for the sale to pay over to the defendants *G. M.* and *Milliken*, (who had been appointed by the Court, in that suit, guardians of the plaintiffs, who were not then of age,) the sum of 518 dollars and 70 cents, for each of the plaintiffs, and which order was directed to be entered as of *February* term of 1815, of that Court. That in *May*, 1815, the commissioners actually paid to the defendants *G. Monell* and *Milliken*, the sum of 518 dollars and 78 cents, for each of the petitioners. That when *G. M.* and *Milliken* were appointed guardians by the Court of C. P., they executed a bond in the penal sum of 5000 dollars, conditioned for the faithful discharge of their trust, and to account in all Courts, &c. when required ; and *Hiram Weller* and *James R. Boyd* executed the bond as sureties. That since the payment of the said moneys to the *G. M.* and *Milliken*, two of the plaintiffs had come of age, and had received the greater part of the money due to them, and have received security for the residue, and do not prosecute this action for any part thereof. The other plaintiffs alleged, that since the giving of the said bond, *Weller* and *G. Monell*, the sureties, had become wholly insolvent, and had been discharged under the act ; that *Boyd* was embarrassed with debts, and *P. Miller's* property, as they were informed, did not exceed four or five thousand dollars, &c. That the said guardians have held the moneys of the plaintiffs, since *May*, 1815 ; and though called on to account, &c., they had refused, &c. The bill *prayed* that the defendants might be decreed to account at large, and particularly for the moneys received as guardians appointed by the surrogate, and as guardians appointed by the Court of C. P., and to pay over the same to the plaintiffs, or further to secure the same, as the Court might direct, &c.

1821.

MONELL
v.
MONELL.

The bill was taken *pro confesso*, against *Miller* and *Boyd*. *G. Monell* and *Milliken*, in their answer, filed *July* 3d, 1820, admitted the granting of letters of administration, and the appointment of them as guardians, as stated in the bill. *G. M.* admitted that he received 291 dollars and 88 cents for each of the plaintiffs. The defendants denied that any part of the moneys ever came to the hands of *Milliken*. They admitted that *G. M.* became insolvent about the 1st of *May*, 1817, and had been discharged under the act, and was still insolvent. That the shares of the plaintiff in the personal estate of the intestate had remained with *G. M.* since *March,* 1814, having come to his hands, *as administrator*. That the plaintiffs had applied to the defendants for a settlement of the personal property; but that the plaintiffs, *John* and *James Monell,* had lately come of age; and the defendants have since been ready and willing to come to a settlement, on being allowed a reasonable compensation for their services in relation to the personal estate, but that such allowance was refused, and interest on the moneys claimed; and they insisted that they were entitled to such compensation, and ought not to be charged interest; and on those terms they were ready to settle and account with the plaintiffs for their respective proportions, &c. They insisted that they were not liable to account, until the plaintiffs, who were infants, had come of age.

They admitted the judgment in partition, and sale of the lands, and the payment of the money to them, and their appointment as guardians by the Court of C. P. and security given by them, as stated in the bill. But they said, it was the understanding and agreement of the parties to that suit, that the real estate should be sold on a credit, and as to the proportions of the plaintiffs, a credit was to be extended to about the time of their coming of age; that, accordingly, a part of the purchase money, equal to the shares of the plaintiffs, was secured by a mortgage, executed to the de-

fendants, and delivered to *G. Monell;* and they denied any payment of the moneys to them, by the commissioners, in any other way, than by delivery of the mortgage to *G. M.* They admitted the insolvency of *G. M.,* and *H. Weller;* but they knew nothing of any change in the circumstances of *Boyd;* that the defendant *Milliken* had ample property, and would be fully able to satisfy all the claims of the plaintiffs, when they should arrive at full age. The defendant *Milliken* answered, that he had never received. as guardian, &c. any part of the proceeds of the personal or real estate, but had actually paid, out of his own property, large sums of money to the plaintiffs.

Proofs were taken in the cause, which were brought to a hearing, and argued by *Betts,* for the plaintiffs, and *Fisk,* for the defendants.

*For the plaintiffs,* it was contended : 1. That both the defendants, *G. Monell,* and *Milliken,* as guardians, are liable to account for the amount of the moneys received by them, to the plaintiffs. The first inquiry, then, is whether *Milliken* did, in fact, receive the money of the plaintiffs. Though the answer was extremely inconsistent and unsatisfactory on this point; yet, for the sake of the argument, it was admitted that it explicitly asserted the negative. The defendants, however, claim compensation for their services, as *guardians,* to which they would not be entitled, but on the ground that they both performed the duties of guardians, in receiving the money and putting it out to the best advantage of the heirs. The assertion of *M.,* in one part of the answer, that he received the money as *administrator,* is contradicted by another part of it, in which he admits that he received it as guardian. The schedule, also, annexed to the answer, exhibits a charge of commission in the account by both as guardians; and one of the exhibits in the testimony proves the same fact. This exhibit may be urged as conclusive proof, at least, until directly contradicted by evidence on the part of the defendants. The *receipt,* more-

over, given by the administrators for the proceeds of the personal estate, is signed by both of the defendants as guardians. It was incumbent on *Milliken* to prove, by other testimony than his own, that *Monell* received the money, in the first instance. The evidence in the cause, as it stands, must prevail against the answer, admitting, even, that it was proof for the defendants, and contained an unqualified and uniform denial of the fact; for the defendant cannot, by his answer only, avoid the effect of a writing under his own signature. (*Phillips' Ev.* 602.) Any matter set up in contradiction to a written receipt must be offered as evidence in avoidance of it. If the defendants had answered that the money was counted to them both, but was taken by *Monell* alone, the latter part of the answer would be a distinct fact in avoidance of the fact previously admitted. (*Hart* v. *Ten Eyck*, 1 *Johns. Ch. Rep.* 162. and note.)

Again; bonds have been executed by both of the defendants to each of the plaintiffs, for the faithful performance by them both of their duties as guardians. It is not, therefore, sufficient to acquit *M.*, that he has fully accounted, when the undertaking is for himself and *G. Monell.* (3 *Johns. Cases*, 52.) In regard to the proceeds of real estate, there is also a receipt to the commissioners signed by both defendants, as guardians, and the whole transaction shows that they acted jointly.

The fact alone of joining in receipts for the money, in the absence of other proof, renders each defendant liable for the whole amount. A rule once prevailed in *England*, which was recognised in *Pennsylvania*, (1 *Dallas* 311.) that either of two executors, who had executed receipts for assets, was liable to the legatee, for the amount only actually received by him. But that rule is exploded, and the doctrine now established at law and in equity, is, that if assets come to the hands of one executor only, but both join in a receipt for them, both are equally

liable to legatees and creditors. (2 *Bro. C. C.* 116. 1 *P. Wms.* 241. 1 *Salk.* 318. 7 *East,* 246.) The common law liability of a guardian and executor is substantially the same. Both are trustees, and are considered as performing their trust gratuitously. (1 *Johns. Ch. Rep.* 84. 510. 527. 620. 303. 281.) Though the question has been frequently agitated, whether one executor or trustee shall be answerable for the neglect or malfeasance of the other, it is well settled, that if two trustees join in a receipt for money, so as not to distinguish what has been received by the one and what by the other, each shall be answerable for the whole. (2 *Fonbl. Equ. B.* 2. *ch.* 7 *note k.* *Gill* v. *Attorney General, Hardres,* 314. 4 *Vesey,* 596. 11 *Vesey,* 252. 333. 7 *Vesey,* 186.)

As to the objection, raised by the defendants, in their answer, that they are not bound to account to the plaintiffs who are infants, before they come of age, the proposition is too unreasonable to merit a serious answer. From the earliest times in the history of the law, guardians have been held liable during the minority of their wards ; (*Co. Litt.* 89. *Fitzh. N. B.* 119. *Cro. Jac.* 218. 640.) and this Court has jurisdiction, on the ground that the guardian is a trustee. (2 *P. Wms.* 119. 1 *Johns. Ch. Rep.* 100.)

The only remaining question is as to the remedy, or the extent to which the defendants are liable. We contend that the moneys due to the plaintiff, who are of full age, ought to be paid to them forthwith; that the shares of the infant plaintiffs be paid into the Court, to be placed out at interest, under its direction ; or that the defendants give further and satisfactory security for the money ; and we claim, also, compound interest and costs. (1 *Johns. Ch. Rep.* 84. 281. 303. 510. 527. 4 *Johns. Ch. Rep.* 281. 620. 2 *Fonbl. Equ. B.* 2. *ch.* 7. *note k.* 7 *East,* 246. 2 *Madd. Ch.* 177. 420. 425. 3 *Johns. Cases,* 59. 1 *Johns. Ch. Rep.* 3. 100. 565. 11 *Vesey,* 462. 18 *Vesey,* 16.)

1821.

MONELL
v.
MONELL.

*For the defendants,* it was contended, 1. That the de-fendant *Milliken* never having received any part of the proceeds of the property, was not liable to the plaintiffs. Trustees have all equal powers and cannot, like executors, act separately, but must join in all conveyances, receipts, &c. It would be, therefore, unjust to make one liable for money received by the other. In *ex parte Parsons,* (*Ambler,* 219.) Lord *Hardwicke* observed, that "if trustees join in giving a discharge, and one only receives, the other is not accountable, because his joining in the discharge was necessary." The defendants explicitly deny that *Milliken* ever received any part of the money, and the allegation is not contradicted by the evidence. They may have joined as guardians, in giving receipts ; but there is no evidence that any of the money ever came to the hands of *Milliken.* In regard to the proceeds of the real estate, the mortgage, it is shown, was delivered to *Monell.* (*Comyn's Dig. Account, A.* 3. *Fonbl. Equ.* 180. *sec.* 5. *note.*)

2. That the defendants are not liable to account to the plaintiffs, who are still infants. The Court are liberal in regard to trustees, so as not to deter men from acting for others. (*Ambler,* 219. 3 *Atk.* 444.) There is no evidence of any misconduct on the part of *Milliken* that ought to induce the Court to remove him, or compel him to account, at this time.

3. Even, if he should be considered as liable for the money, his property is amply sufficient for the security of the plaintiffs. The full amount of the demands of the plaintiffs is not equal to one half of his estate. That the other guardian and one of the sureties are insolvent cannot be imputed to him as a fault. The plaintiffs have entirely failed to show that *Boyd,* the other surety, was insolvent; nor is it pretended that *Miller* is either embarrassed or insolvent. It is true, that both of the defendants executed the bonds with sureties for the due performance of their

trust. But it is a new doctrine, that this renders one trustee liable for moneys received by the other ; and if it is to prevail, no prudent man would incur the responsibility, by executing such a bond. The power of this Court to direct further security is not questioned ; but it is denied that any necessity exists, in the present case, for the exercise of that power.

THE CHANCELLOR. The bill is filed by two of the adult, and by three of the infant children of *James Monell,* deceased, against the defendants, *G. Monell* and *P. Milliken,* as guardians, for an account of the real and personal estate.

1. As to the personal estate, the answers admit, that on the 1st of *March,* 1814, 1459 dollars and 40 cents was received by the defendant *G. M.* as part of the personal estate, and that each plaintiff was entitled to one-fifth, or 291 dollars and 88 cents. But the answers aver, that the money came to his hands, as *administrator,* and they admit, that he, with two other persons, were administrators of the personal estate of *James Monell,* deceased. The answers deny that any part of that money ever came to the possession of the other guardian, *P. M.* The question on this part of the case is, whether the defendant *P. M.* be chargeable with this money, as the defendant *G. M.* is insolvent, and has been discharged under the insolvent act.

The testimony in contradiction to the averment, that no part of that money ever came to the possession of the defendant *P. M.,* and that it was received by the defendant *G. M.* in his character of *administrator,* is derived partly from the answers themselves. The schedule No. 1, annexed to the answers, is signed by the defendant *G. M.,* and it admits the receipt of the 1459 dollars and 40 cents, for the plaintiffs, by him, " as guardian," and both those defendants pray, that this schedule may be taken as part of their answer; and in schedule No. 2, annexed to the

1821.

MONELL
v.
MONELL.

answer, and which they pray to have taken in like manner, the defendants claim a commission of five per cent. on the distribution of the above sum, " as guardians;" and they charge, " as guardians," that commission to each plaintiff, for his one-fifth part of that sum, being 291 dollars and 88 cents.

We have, likewise, a receipt (exhibit A,) signed by both of those defendants, " as guardians," and dated the 24th of *May*, 1815, in which they acknowledge to have received of the two other administrators, (*John D. Nicoll* and *Samuel Monell*,) 1459 dollars and 40 cents, in full of the dividend due from the estate, on settlement, to the five plaintiffs.

The acknowledgments contained in the schedules annexed to the answers, and in this receipt, appear to me to place beyond all doubt the responsibility of the defendant *P. M.*, as one of the guardians, for the money so admitted to have been received ; and they prove that the pretence in the answer that the money came exclusively to the hands of the defendant *G. M.*, in his character of *administrator*, is utterly groundless. It is further to be observed, that the defendant *P. M.* has furnished ho evidence to counteract the inference necessarily resulting from the receipt, that the money came as much into his possession or under his control, as into the possession or under the control of his co-guardian.

2. Those defendants were also appointed guardians by the Court of Common Pleas, in *Orange* county, on a proceeding in partition and a sale of the real estate of *James Monell*, deceased; and, in that character, they received for the plaintiffs, 2593 dollars and 50 cents, being the sum of 518 dollars and 70 cents, for each plaintiff. This money was received on the 6th of *May*, 1815, by the defendants, in a mortgage taken by the commissioners appointed by the Court under the proceeding in partition, and assigned to them. The answers state, that the mortgage was drawn by the purchaser, in favour of the defendants, and de-

livered over to the defendant *G. M.* But the exhibit C. proves, that the mortgage was taken to, and in the name of the commissioners, for the sum of 4381 dollars and 65 cents, payable in one, two, and three years, and that it bore date the 20th of *April*, 1815. The proportion coming to the plaintiffs was covered by this larger sum. The mortgage was registered on the 26th of *May*, 1815, and was assigned to the defendants, for 3781 dollars and 65 cents; and then it was assigned by the defendant *P. M.* to the defendant *G. M.*, on the 7th of *February*, 1816, and cancelled by the latter, by an acknowledgment of satisfaction, on the 12th of *April*, 1816. Why did one guardian assign over his right and interest, as a guardian, in the mortgage, to his co-trustee, unless it was to enable the other to collect and appropriate the amount of the mortgage to his own use, as he shortly afterwards did, and then became insolvent? There is no colour, in law or justice, for the pretence that the defendant *P. M.* can be exempted from responsibility for the loss of that mortgage debt due to the plaintiff, when he thus voluntarily relinquished his interest and possession, as a trustee, to his co-guardian. The presumption is, that he did it to accommodate his companion with the use of the money, for his own private purposes. We have, likewise, in *exhibit* B., a receipt, signed by the two defendants, " as guardians" for the plaintiffs, dated *May* 6th, 1815, in which they acknowledge to have received of the commissioners in partition, 2593 dollars and 50 cents, being 518 dollars and 70 cents for each of the plaintiffs.

In short, the proof is decisive, and of the highest character, to show that the defendants were equally and jointly concerned, as guardians, in the receipt and control of the moneys so received for the plaintiffs, both from the real and personal estate; and the solvent guardian cannot now be permitted to shift the responsibility from himself, and place it exclusively upon his insolvent partner.

*Lord Thurlow*, in the case of *Sadler* v. *Hobbs*, (2 *Bro.* 114.) took it to be a clear rule, that where by any act, or any agreement of the one party, money gets into the hands of his companion, whether a co-trustee or a co-executor, they shall both be answerable.   Where one executor puts money into the hands of his companion, he shows he had it in his power to secure it, and that his companion, for some reason, was permitted to obtain the possession of the money. He referred, among other cases, to that of *Gill* v. *Attorney General*, (*Hardres*, 314.)  in which *Hale*, Ch. B. said, that, if by agreement between two executors, one is to receive and intermeddle with such part of the estate, and another with such a part, each shall be answerable for the whole.

The doctrine in that case perfectly applies to the disposition of the mortgage; and the defendant *P. M.*, " for some reason" not explained, by a formal act, transfers his interest in and control over the mortgage debt, to his companion, to be by him appropriated, dissipated, and lost.

The joining in the receipt of the personal property, is presumptive evidence that the money came equally into the possession or under the control of both the trustees, and it would require direct and positive proof, to rebut that presumption.   Lord *Eldon, in Brice* v. *Stokes*, (11 *Vesey*, 324.) declared, that such a presumption arose from the circumstance of joining in the receipt, and that it was incumbent upon the trustee to destroy the presumption by proof, if he meant to exonerate himself.   There is no proof in this case, to counteract the language of the receipts.   There is no evidence, out of the joint answer of the defendants, that the moneys did not come to the hands of both of them ; and I apprehend, that the answer is no evidence of such a fact set up in avoidance of, and in contradiction to, the language of the receipt signed by the party himself.   And if the money did not, in fact, come to the hands of the defend-

ant *P. M.*, yet if it was paid to his companion, *with his assent and direction*, he is responsible for the misapplication of it.

" If a receipt," according to Lord *Redesdale, in Joy* v. *Campbell,* (1 *Sch. & Lef.* 341.) " be given for the mere purposes of form, then the signing will not charge the person not receiving. But if it be given under circumstances purporting that the money, though not actually received by both executors, was under the controul of both, such a receipt shall charge ; and the true question in all those cases seems to have been, whether the money was *under the control of both executors* : If it was so considered by the person paying the money, then the joining in the receipt by the executors, who did not actually receive it, *amounted to a direction to pay his co-executor ;* for it could have no other meaning ; he became responsible for the application of the money, just as if he had received it." The Chancellor, also, (*p.* 344.) referred to a MS. case of *Cansey* v. *Barsham and Hayden*, decided by Lord *Hardwicke*, in 1753, in which it was declared, that a trustee was only answerable for what he receives, or applies, but *H.* had made himself liable by joining in the deed, by which the purchase money was left in the hands of the purchaser, for payment of the legacies. He was responsible for the deficiency of *B.*, (who was in doubtful circumstances,) though he had received none of the assets, *because he had joined in the direction to pay.*

So in the case of *Brice* v. *Stokes*, already cited, Lord *Eldon* charged a trustee, though he did not receive the money, under the circumstances, he having joined in the receipt, and permitted his co-trustee to keep and act with the money contrary to the trust. This is precisely the present case.

Lord *Alvanley*, in *Harvey* v. *Blakeman*, (4 *Vesey*, 596.) took great pains to extract some principle from the cases. He held that one executor in trust was not answerable for

If two trustees join in a receipt for money, it is *prima facie* evidence, that the money came to the hands of both.

But if one trustee clearly proves, that his joining in the receipt was *necessary* or merely *formal*, and that the money was, in fact, paid to his companion, without his direction or consent, and it was out of his power to control or secure the money, he will not be responsible.

the receipts of the other, merely by permitting the other to possess the assets, and by joining in acts *necessary* to enable him to administer. But if he goes further, and concurs in the application of the assets, he was liable. And from the doctrine in *Crosse* v. *Smith*, (7 *East*, 246.) and in the other cases, which have been referred to, it may be laid down as a principle, that if two guardians or other trustees join in a receipt for moneys, it is *prima facie*, though not absolutely conclusive, evidence, that the money came to the hands of both; that one trustee may show, by satisfactory proof, that the joining in the receipt was necessary, or merely formal, and that the moneys, in fact, were paid to his companion; that without such satisfactory proof, he must be liable to the *cestui que trust.* and that, if the moneys were, in fact, paid to his companion, yet if they were so paid by his act, direction, or agreement, and when he had it in his power to have controlled or secured the money, he is, and ought to be responsible.

In the present case, there is not the least shadow of pretence for exempting the defendant *P. M.* from answering for the proceeds of the real estate belonging to the plaintiffs who are infants; and the plaintiffs who are adults have been already secured in their proportion of these proceeds, and they do not seek any relief in this suit on that branch of the case. With respect to the proceeds of the personal estate, there is no proof to countervail the inference arising from the receipt and the schedules annexed to the answer. And if the money did, in fact, go exclusively into the hands of the defendant *G. M.*, the presumption is, (and, as Lord *Redesdale* observed, the joining in the receipt appears to have no other meaning than this,) that it was paid under the direction of the defendant *P. M.*, and that he voluntarily concurred in such an appropriation of it, when he had the money equally within his own power and control.

The plaintiffs who are adults are, then, entitled to a de-

cree, for the payment, by the defendants *G. M.* and *P. M.,* of the 291 dollars and 88 cents, due to each of them respectively, with interest thereon, from the 24th of *May*, 1815. As to the like sum with interest, due to each of the three infants, and as to the sum of 518 dollars and 70 cents, due to each of the three infants, with interest from the 20th of *April*, 1815, another question arises. The defendant *P. M.* is answerable, as guardian, for these sums, and if they were perfectly safe and secure in his hands, he would not, in an ordinary case, be called upon for the money, until the infants came of age. But if the credit of him, or the sureties, is doubtful or precarious, so as to raise great fear as to the ultimate safety of the moneys, it is then the course of the Court, to allow the moneys to be called in, for and on behalf of the infant, or to require better security. In this case, *G. M.,* one of the guardians, has failed, and been suffered by his co-guardian to appropriate and misapply the trust moneys. The other guardian remains solvent, with depreciated property, and one of the sureties to the guardianship of the personal estate is worth little or nothing. One of the sureties to the guardianship, respecting the proceeds of the real estate, has failed, and the other is the same surety who, as I observed before, is worth little or nothing.

Under these circumstances, of a complete insolvency of one guardian and one surety, of the very slender and doubtful credit of another surety, of the considerable length of time that the minorities of the plaintiffs will continue, and of the heedless manner in which the only solvent guardian has suffered his companion to deal with the property, I am of opinion, that the defendant *P. M.* ought to be required to bring the moneys due to the infant plaintiffs into Court, to be put out under its direction, or to give further and sufficient security, to be approved of by a master, to account for the principal and interest to the infants, when of age.

It is too plain a proposition to stand in need of authorities,

Guardians or trustees, may be called to account by infants, and be required to bring the trust moneys into Court, and to give further security to account, when the infants come of age.

(though the counsel for the plaintiffs have cited some to the point,) that the infant ward may come into this Court, by ·his next friend, and call his guardian to account, or require him to give better security, if the state of the case should call for it. Lord *Redesdale* said, in *Blake* v. *Blake*, (2 *Sch. & Lef.* 26.) that according to the modern decisions and present practice, where there are no debts, or the debts are all paid, and no purpose for which money is to be left in the hands of a testamentary guardian and executor, the money is ordered into Court, and laid out for the benefit of the parties concerned.

The following decree was entered :

" It is declared, that the defendant *P. M.*, is responsible, as guardian, for the proceeds of the real and personal estate of *J. M.*, deceased, belonging to the plaintiffs, and which may have come to his possession, or under his control, and particularly for which joint receipts of the dates of the 6th and 24th of *May*, 1815, were given by him and the defendant *G. M.*, as guardians, to the plaintiffs. And it is further declared, that the two plaintiffs who are adults, are entitled to payment from the said guardians, and from the defendants *J. R. B.* and *P. M.*, as their sureties, upon their default, of their proportion of the proceeds of the said personal estate. And it is further declared, that the plaintiffs who are infants, are entitled to call the said guardians to account, touching their respective proportions of the proceeds of the said real and personal estate ; and, inasmuch as one of the guardians and one of the sureties given by them, have become insolvent, and the security otherwise impaired, the infant plaintiffs are entitled to have the balance of such proceeds due to them, either brought into Court, to be put out under its direction, for their benefit, or to have the defendant *P. M.*, the solvent guardian, give additional and satisfactory real security, to account and pay, when the infants come of age. It is thereupon ordered, &c. that it be referred to a master, to take and state an account of the amount due to the plaintiffs *J.*

*J. M.* and *J. M. M.*, from the defendants *G. M.* and *P. M.*, as their late guardians, for their proportion of the proceeds of the personal estate, and that on such accounting, the defendant *P. M.* be charged with their proportion of the proceeds which may have come to his hands or possession, and particularly for which he united in a receipt with the defendant *G. M.*, to two of the administrators of the said estate; and that he be also charged with lawful interest on such proportion of the said proceeds, from the date of such receipt, and be credited for all payments made to those plaintiffs by either of the defendants, and that he be also entitled, on such accounting, to all just allowances, charges, and expenses, as guardian, and properly chargeable to those plaintiffs. And it is further ordered, that the master, also, take and state an account of the moneys due the infant plaintiffs, for the proceeds of the real and personal estate belonging to them, and which may have come to the hands or possession of the defendants *G. M.* and *P. M.*, or either of them; and that on such accounting, the defendant *P. M.* be charged with the proportion of the said proceeds, belonging to the said infants, which may have come to his hands or possession, or been subject to his disposition or control, and particularly that he be charged for the amount thereof so due to the said infants, and contained in the said receipts of the 6th and 24th of *May*, 1815, or either of them; and as and for so much cash received, from the dates of the said receipts respectively, together with lawful interest on the balance so to be found due to the said infants, from the date of the said receipts; and that the said *P. M.* be credited for all payments and advances (if any) to and for the said infants respectively, made by either of the defendants, and be allowed all just allowances, charges, and expenses, as such guardian, and which may be properly chargeable by him to the said infants. And it is further ordered, that he take and state an account of the amount, value, and competency, of any security, real or personal, that may be offered by or on behalf of *P. M.*,

1821.
NORTH RIVER
COMPANY
v.
HOFFMAN.

for the payment of the said balance, with interest, when the said infants shall respectively arrive at full age, together with his opinion touching the solidity and safety of such se-- curity; and that he report thereon with all convenient speed; and the question of costs and all further questions are reserved until the coming in of the report."