Brooke, J.
I concur entirely in the opinion to be delivered by the president, except that part of it that treats John T. Coolcus one of the administrators of John Morrow, as a cosurety with the other sureties who executed the bond, for the faithful administration of the estate of Morrow. I cannot think that by signing and sealing the bond which was required by the act of assembly, as principad, by a construction of the bond according to the principles of the common law, and not according to the principles of the act, he can be considered a.s a surety for the due administration of the assets. As principal he was not liable for any of the acts of his co-administrator in which he did not participate. 3 Bac. Abr. pp. 30. 31. Executors and administrators. D. and the cases cited in the note. Nor is there any thing in the act under which'the bond was taken, to change the relation in which he stood to his co-administrator at the common law. On the contrary, the administrator is not looked to by the act as surety *66 for the faithful' administration of the assets. If he is ... . the next oi km to the intestate, and can give security for the faithful administration of the assets, he is entitied to the administration under the act, though he may he a pauper. The policy of the act does not look to his solvency, but to the relation in which he stands' to the intestate, and his capacity to administer the assets. That he is not looked on as a surety for the administration of his co-administrator, I think is manifest from other provisions of the act. The 37th section of the act, 1 Rev. Code, ch. 104. p. 384. makes the justices liable if they take insufficient security in the administration bond; certainly not regarding the eo-administrator as a surety, to whom, if a pauper, and fit in other respects, and next of kin to the intestate, the justices are compelled to grant the administration. That he is not looked to as surety, is to my mind manifest from other considerations. If CooJcus is to be treated as one of the sureties taken by the justices, and his co-administrator Worthington and the' other sureties in the bond proved insolvent, and the sureties insufficient at the time they executed the bond, Coojms would» be responsible for the whole amount of the waste of his co-administrator, and if he too, at the time administration was granted to him, was insolvent, the justices would be responsible, though as principal no responsibility attached on him for the mal-administration of Worthington his co-administrator. Ry the 38th section of the act, 1 Rev. Code, p. 384. the co-administrator is certainly not regarded as a cosurety with others. It declares that when sureties for executors or administra‘tors conceive themselves in danger, they may apply for counter security; certainly not meaning the principals in the bond. It would be strange if a co-administrator was to come into court, or both together, to require additional security; and yet if they are cosureties by construction of the bond, they might make the applica *67 tion. I think it was not intended by the act to change the relation of one co-administrator to another; not to regard him as surety, but as a principal responsible for i , , . his own acts only, and. the sureties to the bond as responsible for the acts of both or either of the co-administrators. That if sued at law on the bond they must be considered all as principals, according to the com-' mon law is true, but not according to the principles of the statute. According to those principles, if the suit was brought at law on the bond, and one of the administrators, upon the proofs, was found to be innocent of all waste or mal-administration, I think there is nothing so inflexible in the common law as to subject him to a judgment. The common law, on the contrary, is said very wisely to mould itself to the exigencies that arise in the contracts and engagements of persons; and I see no inconvenience, in this case, in adapting its judgment to the case (especially when it accords with the sound .construction of the law under which the bond was taken) and instead of rendering the judgment against all, rendering it against the responsible parties alone.
Tucker, P.
The question of most importance in this case is the extent of the responsibility of Coohis, one of the administrators of Morrow, for the devastavit of his co-administrator Worthington, who upon the settlement of the estate account proves to be largely in arrears to his intestate’s estate. It is contended that he executed an administration bond jointly with the administrator Worthington, and that he has thereby made himself responsible for his defalcations, without being-entitled to aid or contribution from the sureties in the bond. In the examination of this question, I shall not attempt to follow the counsel in the various arguments which have occupied several days on this new and interesting topic, but shall endeavour to present the rea *68 sons in support of my opinion in as condensed a' form as I find practicable. I shall conduct the enquiry under two heads, into which the subject naturally divides itself: 1st. Is Cookus to be considered in this bond as principal in relation to Worthington's transactions, or only as surety? and 2ndly, if only as surety, are the other sureties to be regarded, in reference to Worthington?s transactions, as sureties for Cookus, or only as co-sureties with him for Worthington?
First then, is Cookus to be looked upon in this bond, in reference to Worthington's transactions, as principal, or only as surety ? By the common law, executors and administrators are all considered as having a joint interest in the property of the testator or intestate. They are esteemed in law but as one person representing the testator, and the acts of any one relating to the delivery, gift, sale, payment or release of the goods, are deemed the acts of all; for they have a joint and entire authority over the whole. 3 Bac. Abr. 30. Nevertheless it is equally clear that one executor or administrator shall not be charged with the wrong or devastavit of his companion, and shall be no farther liable than for the assets which came to his hands. 3 Bac. Abr. 31. It is thus manifest that while the law recognizes the joint rights of co-executors, it does not recognize a joint responsibility. And this is obviously the case, whether executors qualify jointly or separately; for the joint character of their interest arises out of the will which creates them, and does not merely grow out of their qualification: and in like manner, whether they qualify separately or together, their responsibilities are the same for the acts of each other; for if even the act of the testator in uniting them in the fiduciary character has not the effect of so uniting them as to make one responsible for the acts of the other, the simple act of granting joint letters testamentary cannot have that effect; since the probat consists of nothing but the proof of the will and the oath" *69 of the executor, to which by our law the execution of a ^ bond is superadded, with a few exceptions. Where no such bond is given, as in England, New York, Pennsylvania &c. there can be no pretence for inferring, from the single act of probat, the creation of a farther responsibility than the acceptance of a joint trust would of itself create; and we know that joint executors are not responsible for each other, unless by their own act they adopt the act of their fellows, or put it in their power to receive and waste the estate. The same principles apply, I conceive, where executors enter into a joint bond, and also to the case of joint administrators, unless in these cases the bond can create a larger responsibility ; which must therefore be the next subject of our inquiry.
We have already seen that executors are not farther liable than for the assets which come to their hands: and in the same passage we learn, what every practitioner well knows,-that where an action was brought against two executors, and the jury found that the two and another were made executors, and that the third wasted the assets to the amount of £600. and died, and only £16. came to the hands of the two others, the court held that they should be chargeable for no more than the £16. and judgment was entered accordingly. It is obvious, then, that as there is only a judgment for £16. against the survivors, an action of debt suggesting a devastavit can only lie against them for that sum, although in point of fact £600. more of the estate has been wasted. For that sum only, therefore, will the judgment in devastavit be entered. Now until within a few years no action could be brought on the bond until a recovery in an action of devastavit. Suppose then, before the amendment of the law as to this matter, a suit had been brought on the bond. The breach assigned could only have been in not paying the £ 16. An assignment of breach that the surviving executors *70 had not paid the £ 600. wasted by the third executor could never have been sustained, because there was no precedent judgment in devastavit against them for that r TT J ° . . . . & , , _ , sum. Hence it is obvious that as the law formerly stood, the co-executor was not made responsible, qua executor, for the act of his fellow, by the operation of the bond; and I cío not perceive that the change of the law makes a difference. For even now the judgment on the bond could only be against the two executors for the £16. since the first judgment against them could be for that .sum only, to be levied in their hands. So that it is manifest that the execution and existence of the bond can in no wise add to the responsibility of the executors for each other, or charge them farther than they would be chargeable upon common law principles, for the acts of each other.
It has been attempted, however, to shew that to the plea of plene administravit by the executor who is not in default, it would be competent to reply that the parties had executed a joint bond, and were therefore bound for each other’s acts.
This position, it must be conceded, is altogether new, and, as it appears to me, is entirely inadmissible. I have never seen the precedent of a replication of this description, nor heard of its introduction into any course of pleading. Had the principle been true, it must long since have been established in Great Britain, where innumerable controversies are hourly arising as to the responsibility of one administrator for another. But in truth it is no answer to the plea, nor is the principle assumed sustained by the true character of the bond. It is no answer to a plea alleging that A. has fully administered, to aver that B. has not fully administered; and hence such a replication would be bad upon demurrer. Nor is the principle of it sustained by the true character of the bond. Admitting that the bond makes each responsible for the other, yet there is nothing in it *71 bv which either makes the acts of the other his own. * . . By what strained construction can we make the mere execution of a bond binding the parties to a just administration, an approval, by anticipation, of all the acts of waste, mal-administration and peculation of which either may be guilty ? With what justice can we deduce from the execution of the bond an acquiescence,' and indeed a participation, a priori, in a fraudulent release of a debt made by Worthington without the knowledge of Cookus, or in his fraudulent purchase of the merchandize of his stores with the bonds or the property of the estate? Surely such a principle of construction would not only be in violation of the true character of the contract, but a gross injustice, a violent fiction invented for the purpose of casting a burden upon the innocent and unoffending. On the other hand, if the co-executors are held responsible indeed for each other’s acts, but are not regarded as approving by anticipation and assenting to all the acts of each other, the purposes of justice and the object of the contract are fully answered. Their responsibility for each other, ex vi termini, implies that he who is in no default stands but as the sponsor or surety for the other; whereas if they are held to join by anticipation in all the acts of each other, they are made to stand as principal in acts in which they have had no participation and no knowledge ; and are thus made actors in matters in which they ha.ve ha.d no action, by themselves or their agents. They can only stand in the relation of sureties or of principal; and they cannot be considered as principal, when the whole act is done by another, without their participation in person or by one acting under their authority: for it would be absurd to infer that by executing a bond for the faithful administration of the assets, an authority is given to waste the estate.
I did not understand mr. Johnson as insisting on this broad principle. I understood him to admit that co- *72 executors are to be considered as sureties for each other, aild not in the light of principals as to each other’s transactions. This indeed is obvious from what has just been said, and is manifest where the executors alone ^ave signed the bond. There, each stands as the surety of the other, and each is principal in relation to his own transactions. The laio in fact knows no difference between them: equity only recognizes it. And whom does equity look upon as principal ? Upon him who receives the money, — who does the act, — who gains the advantage or commits the wrong. The innocent, though responsible, is not considered a principal: he is only a surety. To test this, let us suppose that two executors join in an executorial bond without any other party to the bond, and one wastes the whole estate, and in an action on the bond the other is made liable. It cannot be questioned that he would have relief in equity, upon a bill against his fellow to compel him to reimburse him. Equity would hold him to be a surety only, and would relieve him accordingly.
If, then, two executors executing a joint bond without any other party to the bond are to be considered as standing in’relation to each other as principal and surety, each being considered as principal as to his own acts, and surety only as to the transactions of his companion; there is an end at once to the notion of identity as to their responsibility. There is an end at once to the notion that each is to be considered as fully bound by the acts of his companion as if he had joined in them, or as if they had been his own acts; and there is an end to the notion that in joining in a bond they are to be presumed to have designed to make themselves responsible qua executor, or in any other manner than as surety. And if this be so where they are the only parties to the bond, how can the terms or meaning of the engagement be affected by others uniting in the bond r The co-executors must still stand as sureties for each *73 other, but as sureties only. And then we are brought to the consideration of the second question, whether the other sureties are to be regarded, in reference to Worthington's transactions, as sureties for Cookus, or only as cosureties with him for Worthington? And here I am ready to admit that if Cookus had applied to any one of the sureties to join with them in the bond, and he had declined unless Cookus would engage to stand between him and danger, there would be no doubt that Cookus would be bound to indemnify him, since he would thus be surety for Cookus, and not merely cosurety with him. But nothing of this kind appears. It does not appear that the sureties even joined upon his request. Non constat that they did not join at Worthington's request; and however they may have joined, and at the request of whichever party, they must be presumed to have known that Cookus and Worthington stood only as mutual sureties for each other, and could only be bound as such. Knowing this, if they joined in the bond without an engagement that Cookus should stand between them and danger, Cookus does not lose his character of surety, nor is he to be considered as primarily liable, and the sureties only bound in the event of his insolvency. It was admitted, in the argument that this doctrine of contribution is not to be regarded as matter of contract, but as resting on the equitable principle of equalizing a burden between those who are bound to bear it. It is thrown upon those who in justice and right ought to be subjected, and in the proportions in which they ought to be charged. Suppose, then, Worthington in this case had received and wasted 10,000 dollars, and that sum had been recovered, by a creditor, of B. one of the sureties. B. files his bill in equity against Cookus, who is also but a surety quoad Worthington's transactions, to put the whole burden upon him. Both were equally liable at law; where then is B.’s superiour equity? He does not shew that his engagement was on the faith of *74 Cookus's promise to save him harmless. His whole ground of equity is that Worthington, for whom he was surety, has wasted the estate, and he claims full indemnity from Coolcus, who like himself is but a surety ; who had no power over Worthington than he had, and who was no more responsible for Worthington’s acts than he ; since the responsibility of both arises from the same source — the execution of the bond. He does not then > shew superiour equity, except for contribution to the amount of Coolcus’s share of the burden. For this,-and this only, is he entitled to relief. With these views of the question, I am clearly of opinion \hd,tfJoolcus is responsible only in the character of surety, so far as relates to Worthington’s transactions, and is not primarily bound, but that the burden must be placed in equal proportions upon the shoulders of himself and the four sureties in the bond.
A doubt has been suggested whether Coolcus is liable at all. I think it very clear that he is liable. There can be no question that he is liable in an action at law on the bond ; and I certainly do not perceive what superiour equity he can have over the sureties, to entitle him to a discharge from a common liability with them.
The next question in the cause arises out of the Rutherford debt. Robert Rutherford was largely indebted to the estate of Morrow; and Coolcus and Worthington, the administrators of the latter estate, became jointly administrators of the estate of Ruthejford. In that character, Worthington proceeded to collect a large sum out of the property of Rutherford, which it is alleged was properly to have been appropriated to the debt due to Morrow, and which the chancellor accordingly directed to be passed to the credit of his estate, and to be charged not only against Worthington, but against Coolcus also, the co-administrator, who received no part of the funds.
It has been a subject of controversy in the argument, whether the funds received from Rutherford’s estate were *75 derived from his realty or his personalty. But in the view I take of this matter, it is unimportant which. If it was personalty, then the money having been received by Worthington alone, CooJcus was not responsible qua administrator of Rutherford; nor is he responsible as surety for Worthington as administrator of Rutherford, because the administration bond is void, upon the authority of Frazier &c. v. Frazier's ex'ors &c. 2 Leigh 642. If it was realty, then the money was received by WortJdngton as joint trustee with CooJcus; and then, even if they had joined in the receipt of the money, he would not necessarily be liable, since the joining might have been necessary, or pro forma: and at any rate, if paid to his companion without his consent or direction, he would not be chargeable. Monell v. Monell, 5 Johns. Ch. Rep. 296. I am therefore of opinion that as a representative of Rutherford's estate, CooJcus was in no wise responsible for the receipt of the money by his co-administrator.
It is contended, however, that as the funds thus received by Worthington of Rutherford's estate were immediately applicable in his hands to the payment of the debt to Morrow, that application must be intended to have been made. This is an important and interesting question, since upon it depend the respective liabilities of different classes of sureties, where the same person is administrator both of the debtor and creditor estate, and has received of the former sufficient assets to discharge the debt due to the latter.
In the somewhat analogous case of a person acting in the two characters of guardian and administrator, this court seems evidently to have contemplated the necessity of some act on the part of the administrator, manifesting his election to hold the funds (which he received as administrator) in the character of guardian, in order to charge the sureties in his guardian’s bond. Myers v. Wade, 6 Rand. 444. Broaddus &c. v. Rosson *76 &c. 3 Leigh 12. See also Pratt et al. v. Northam, et al. 5 Mason 108. A similar principle had long before been adopted in reference to a husband executor, who is also legatee in right of his wife. Indeed it is the well recognized principle of the common law, that such executor must by some act or declaration manifest his intention to take his wife’s legacy in the character of husband, or he will be construed to continue to hold it as executor. Toller 344. Wallace et ux. v. Taliaferro et ux. 2 Call 447. His first and general authority is as executor, and notwithstanding the union of the two characters of executor and legatee in right of his wife, and though not a single debt be due, his assent to the legacy’s vesting in him as legatee is as necessary to vest it in himself, as it would be to vest it in another. The consequence is that if the husband dies without such election, the legacy survives to the wife. Baker v. Hall, 12 Ves. 496. Wall v. Tomlinson, 16 Ves. 413. I cannot perceive any material distinction between these cases and the case at bar. Though Worthington as administrator of Morrow had a right to retain what he received as administrator of Rutherford, for the payment of the debt to Morrow, Toller 296. yet as this right depended upon the situation of Rutherford’s estate, upon the comparative dignity of the demands against it, and (if the funds were derived from the realty) upon the right of the creditor Morrow to charge the realty, and if he had right, then upon the proportion be was entitled to receive, it would be going far to say that the funds as soon as received should be passed to the credit of Morrow, with or without the consent of the administrator of Rutherford. It cannot be denied, I think, that he might have refused so to appropriate the funds. Suppose he had in fact refused: suppose he had in fact applied the funds to the payment of Rutherford’s simple contract debts: would it still have been said that the funds had come to the hands of Morrow’s administrator, *77 when in fact he had wasted the estate of Rutherford by failing to pay off a debt of superiour dignity ? Would not Rutherford’s estate still be liable for this debt, and would not the sureties of Worthington in the bond be chargeable (if the bond were valid) for his failure to make a due appropriation of the funds which came to his hands as administrator? I apprehend they would, most assuredly; for he has received funds, and has done no act by which they have been paid over to another.
If the fact of refusal to appropriate the funds of the debtor estate to that of the creditor excludes the idea of such actual appropriation, the facts in this case are well nigh decisive as to that matter; for Worthington received all those funds anteriaur to the settlement of his account as administrator of Morrow’s estate, and upon that settlement gave no credit for the amount; and what is yet more decisive of his declining to pass over the funds from one estate to the other, he has not, in his settlement of his account as administrator of Rutherford, charged that estate with one cent passed over in payment of the debt to Morrow.
It is said, however, that he ought to have done it, and therefore the law will intend that he has done it. That he ought to have done it, is most true; etnd that for omitting to do it, his sureties (if the bond were good) w'ould be responsible, is not less<,true. But why shall the law intend, against the obvious intentions of Worthington, that he has done that which he not only did not do, but which he obviously intentionally omitted to do; when such intendment can only serve to shift a burden from one set of sureties to another? Intendments of law are often fictions. Fictions are introduced to effect the ends of justice, and the law never will permit them to work injustice: and what injustice would be more gross than, upon a mere fiction, to transfer the responsibility of the acts of an administrator from one-set of sureties to another? The last act of Worthington in relation to these funds (of which we know any *78 thing) is the receipt of this money. For this receipt, and the proper application of the money, his Rutherford sureties would have been responsible, and they could not discharge that responsibility except by shewing that in point of fact he had properly applied them. It would indeed be a novelty, if the administrator is to be presumed to have done right, so as to exonerate his sureties, when there is demonstrative certainty that he has not done right, but has wasted and converted to his own use the estate for which he is responsible.
But it is said, Coolcus is responsible for not having collected the debt from Rutherford's estate. He is responsible, it must be admitted, qua surety; but he is not responsible qua administrator of Morrow. For there has been no negligence. The funds of Rutherford's estate came within the power of the administrator Worthington, and he is indeed responsible for not passing them over to Morrow's credit, and paying Morrow's debt with them; but Coolcus is not; for he had no power, either by suit or otherwise, to compel Worthington to pass the funds to Morrow's credit.
In every view, therefore, I am of opinion that Coolcus is only responsible as surety, pari passu with the other sureties, and that the decree which charges him without bringing the other sureties before the court is erroneous.
As to the Merritt debt, there can be no doubt, I think, that the administrator should have been credited with it as paid on the 27th of May 1823; and the exception to the item was properly overruled.
The decree of the court of appeals was as follows : “ This court is of opinion that the appellant should not have been held or made liable, qua administrator, for the acts, devastavits or defaults of his co-administrator Worthington, as he does not appear to have contributed to his devastavit, or to have paid over moneys to him, or to have joined in receiving funds which he has permitted him to retain: that as obligor in the joint bond en *79 tered into for the faithful administration of the estate of ... ... John Morrow, ho became indeed responsible as surety for the devastavit, default and negligence of his co-ad- ...... ministrator, but was only so responsible m his character of surety, and W'as only chargeable pari passu with the other sureties in the bond. It was therefore premature and erroneous to decree against him in that character for the devastavit of Worthington, without having previously convened the other sureties before the court, that the burden might be equally borne by them all. And the court is further of opinion that the administration bond on (he estate of Rutherford was void, on the authority of Frazier &c. v. Frazier’s ex’ors &c. 2 Leigh 642. and that neither Coohus nor the other sureties in that bond were bound by it: and moreover,, as the funds received from the Rutherford estate by Worthington were received in the execution of the trusts of Rutherford’s will, Coohus was in no wise responsible as cotrustee or co-administrator for the receipt and embezzlement of the money by Worthington, inasmuch as there is no evidence establishing such co-operation in his acts as ought to charge him. But the court is of opinion that if it should ultimately appear that the funds so received by Worthington from Rutherford’s estate ought to have been passed over by him to the credit of Morrow’s estate, then the sureties for his administration of Morrow’s estate, including the appellant Coohus, are responsible for his omission so to pass them over, and for his devastavit of those funds. And the court is further of opinion that the chancellor did not err in overruling the plaintiffs’ fourth exception; the court being of opinion that the payment of the Merritt debt by Hageley on the 27lh of May 1823, at the request of Coohus and on his promise of repayment, should be considered as a payment of that date, whatever might be the date of his repayment to Hageley. Therefore it is considered that the decree be reversed with costs, and the cause remanded &c. for new parties and farther proceedings.”