Jacob Mesick, executor, &c. of Thomas Mesick, appellant, *vs.*
Stephen Mesick and others, respondents.

Upon the final settlement of the accounts of executors, before the surrogate, lega-
tees who have appeared by their counsel before the surrogate, and are contest-
ing the executors' accounts, are not competent witnesses; although, upon being
offered as witnesses, they have assigned their claims upon the estate.

But a legatee who has been paid the full amount of his legacy, and has executed
to the executors a receipt in full, is a competent witness.

Ordinarily, an executor is not liable for money received by his co-executor. But
where one executor, having the actual possession of money or securities be-
longing to the estate, hands over such money or securities to his co-executor,
he will only be exempted from liability, upon showing good reason for having
done so.

Accordingly, where an executor had assets of the testator in his possession, and
had given a receipt for them, in which he undertook to collect the same, and
apply the proceeds in the manner designated by the testator; and he afterwards
voluntarily delivered such assets to his co-executor, without any good reason
for so doing; *Held*, that he was answerable for a misapplication of the assets
by his co-executor.

And if such receipt, given by the executor for the assets, embraces a debt owing
to the testator by the executor himself, the receipt will be held a solemn recog-
nition of the existence of the demand, by him, and he should be charged there-
with, by the surrogate, on the final accounting of the executors.

This was an appeal from the decree of the surrogate of Al-
bany, upon the final settlement of the accounts of Jacob Mesick,
the appellant, and the respondents Stephen Mesick and Henry
Van Denburgh, as executors of the will of Thomas Mesick, de-
ceased. The will was executed on the second day of April,
1840. The testator first directed that his debts, and the lega-
cies mentioned in the will, should be paid by the executors out
of his personal property, if sufficient for that purpose, and if not
sufficient, then that such debts and legacies should be a lien
upon his real estate. He then gave to each of his sons, Thomas,
Peter, John, Henry, George and Stephen, and to each of his
daughters, Christina and Mary, and to the children of his de-
ceased son William, legacies of $375, to be paid in one year

after his decease, with interest from the date of his will. He also gave to the wife of the appellant a legacy of $200, and to each of his two daughters $50, payable when *they* should attain the age of twenty-one years. In conclusion he gave to his son Jacob, the appellant, his heirs and assigns, all his real and personal estate after paying the legacies above set forth. At the time the will was executed, the sons of the testator were all present. An inventory was made of the notes and other securities belonging to the testator. It amounted to $3910,59, and included a demand of $600 against the appellant Jacob Mesick. At the foot of this inventory a receipt was drawn and signed by Jacob Mesick as follows: "Rec'd, April 2, 1840, from S. Mesick and H. Van Denburgh, executors of the last will and testament of Thomas Mesick of Guilderland, the above notes belonging to the estate, amounting to $3910,59. Rec'd for collection for the estate, and to account to the executors for the same, and for to pay off the legacies in the will. Jacob Mesick."

The testator having died, letters testamentary were granted to all three of the executors named in the will, on the 11th day of May, 1842. A final settlement of the accounts of the executors, upon their own application, was had before the surrogate of Albany, and a decree made on the 13th of May, 1847, whereby it was determined that Stephen Mesick and Jacob Mesick had received of the personal estate and effects of the testator $4748,33 including interest to the date of the decree; that Stephen Mesick had received individually $170, and Jacob Mesick was individually chargeable with $413 for personal property received by him from the estate; that Stephen Mesick and Jacob Mesick were entitled to credits to the amount of $2978,12, including the legacy of $375 paid to John Mesick, and that they were still chargeable with a balance of $1978,21, of which $170 was to be paid by Stephen Mesick individually, $413 by Jacob Mesick individually, and the balance of $1395,21 by Stephen and Jacob jointly. The decree also charged Stephen and Jacob with the costs of the guardian of the infant legatees, allowed at $25, the costs of Henry Van Denburgh, one of the

Mesick *v.* Mesick.

executors, allowed at $42,62; and the surrogate's fees, amounting to $65,35.

Upon the hearing, the appellant claimed that he had applied, in the due course of administration, all the moneys collected by him upon the securities left in his hands on the second of April, 1840. And that he had delivered over to his co-executor Stephen Mesick, the residue of such securities. The surrogate held that Jacob Mesick, as well as Stephen, was liable to account for the securities delivered over to Stephen, and which were, or might have been, collected by him. The surrogate charged Jacob Mesick with $343 as the value of certain articles of personal property belonging to the estate and which had been received by him. Also with $70 for money received of one Lanehart for the estate, making the sum of $413, for which he was decreed to be individually liable. These were the grounds of error complained of by the appellant in his petition of appeal. The respondents specified as erroneous the allowance by the surrogate to the appellant of $507,20 for expenses incurred in establishing the will. And also that the surrogate had not charged the appellant with the item of $600 for the demand against himself mentioned in the inventory and receipt of the second of April, 1840. Upon the hearing before the surrogate Peter T. Mesick and George Mesick were offered as witnesses, on the part of the legatees. They were objected to by the counsel for the appellant, on the ground of interest. It appeared that while the proceedings were pending before the surrogate, and for the purpose of making them competent witnesses, they had severally assigned the balance of their respective legacies. They were still objected to, on the ground that they might be liable for costs, and were therefore interested. John Mesick, another legatee under the will, was offered as a witness, and objected to as interested. It appeared from the account of the appellant, and his vouchers filed with the surrogate, that his legacy had been fully paid.

*R. W. Peckham*, for the appellant.

*J. Lansing*, for the respondent.

Mesick *v.* Mesick.

*By the Court,* HARRIS, J. I think the objection to the wit-
nesses Peter T. Mesick and George Mesick, on the ground of
interest, was well taken. They were clearly interested in the
result of the matters in litigation before the surrogate. As leg-
atees claiming under the will, they had appeared by their coun-
sel before the surrogate, and were contesting the appellant's
account. Though they had, when offered as witnesses, assigned
their claims upon the estate, they were still parties to the pro-
ceedings, and might have been charged with costs, in the dis-
cretion of the surrogate. They are proper parties to this appeal,
and may yet become liable for costs. The surrogate, therefore,
erred in allowing them to be examined as witnesses on behalf
of the respondents, and their testimony must be rejected. But
John Mesick was a competent witness. He had been paid the
full amount of his legacy, and had executed to the executors a
receipt in full. Although it is stated in the return that Mr.
Lansing appeared for all the legatees, except the minors, who
appeared by guardian, yet I understand that it is only meant
that the legatees still claiming an interest under the will ap-
peared. This is further evident from the fact that John Mesick
is not made a party to the appeal. He was in no way interest-
ed in the question upon which he was to be examined. He
was therefore properly admitted.

The testimony of Peter and George Mesick being rejected, it
necessarily follows that the charge against the appellant for
$70, collected of Lanehart in 1839, and also the charge of $343
for personal property of the testator, received by the appellant,
must be rejected, and that part of the decree which charges the
appellant with the payment of $413, on account of these items,
must be reversed. George Mesick is the only witness in respect
to the charge of $70, and without his testimony there is not
sufficient evidence to sustain the charge of $343. It is true
that John Mesick speaks, in general terms, of the personal prop-
erty, but he does not specify the items, or the value. His tes-
timony alone is insufficient to sustain this part of the decree.

I think the surrogate was right in holding the appellant re-
sponsible for the securities which he received on the 2d of April,

1840. It was not pretended that the securities were uncollectable, or that they had not in fact been collected, but the appellant insisted that, having handed them over to Stephen Mesick, his co-executor, he was exonerated from further liability. It is true that, under ordinary circumstances, an executor is not liable for money received by his co-executor. But where one executor, having the actual possession of money or securities belonging to the estate, hands over such money or securities to his co-executor, he will only be exempted from liability, upon showing good reason for having done so. The rule is stated, in the authorities, to be, that where, by an act done by one executor, any part of the representative estate comes to the hands of his co-executor, the former will be answerable for the latter, in the same manner as he would have been for a stranger, whom he had intrusted to receive it. (*Clark* v. *Clark*, 8 *Paige*, 142, *and cases there cited.*) The same rule is perhaps better stated in *Williams on Executors*, 1119. "If an executor," he says, "is merely passive, by not obstructing his co-executor from getting the assets into his possession, the former is not responsible. If, however, the one in any way contributes to enable the other to obtain possession, he is answerable, notwithstanding his motive be innocent; unless he can assign a sufficient excuse." Applying this rule to the appellant's case, there can be no doubt of his liability. He had the assets of the testator in his possession. He had, moreover, undertaken to collect those assets, and apply the proceeds in the manner designated by the testator. He voluntarily delivered those assets to his co-executor. No good reason is shown why he should thus transfer the possession. If, therefore, the assets have been misapplied by his co-executor, he must be held answerable for such misapplication.

The expenses incurred by the appellant in establishing the will were properly allowed to him by the surrogate. It is true, that the effect of such allowance is to charge those expenses upon the legatees exclusively. But I can not say that this is unjust. It was on their behalf that the probate of the will was resisted. It is probable that they were ignorant of the existence

of the deed conveying to the appellant all the testator's real estate; or if not, that they supposed the deed might be successfully attacked. Otherwise neither party could have had any interest in contesting the probate of the will. The distribution of the personal estate among the legatees was substantially the same as it would have been among the next of kin, if the will had been rejected. The parties were therefore only interested in having the will established or defeated as it affected the real estate; and if the deed executed by the testator to the appellant was to take effect, there was no real estate to be affected by the will. But whatever may have been the object of the parties in contesting the probate of the will, at so great expense, the respondents failed in the contest, and, so far as I can see, are rightfully subjected to the expenses incurred by the appellant in that litigation.

But in respect to the demand of $600 against the appellant, embraced in the receipt of the second of April, 1840, I think the surrogate has misapprehended the effect of the evidence. That receipt was a solemn recognition of the existence of such a demand. The appellant is presumed to have been fully cognizant of all that the instrument signed by him contained. This item was evidently taken into the account, in the estimates made at the time the will was executed, for the purpose of ascertaining the amount of the legacies which the testator would be able to pay to his children. The testator's intention manifestly was that the appellant should pay the full amount of those legacies. Hence it was that when he executed the will he not only placed in the hands of the appellant securities, including the $600, sufficient to pay all the legacies, but also expressly charged his real estate with the payment of any deficiency, and then devised all his real estate, subject to such charge, to the appellant. It is quite evident from the tenor of the will, that at the time it was executed, neither the testator nor his children, with the exception, perhaps, of the appellant, understood that the title to his farm was already vested in the appellant. If, in fact, the farm had been so conveyed, and the personal property, too, had already been given to the appellant, there was but little neces-

Mesick v. Mesick.

sity for making a will, for the mere purpose of distributing among the children of the testator in equal proportions the proceeds of the securities he yet held. All the circumstances attending the transactions which occurred at the time the will was executed, tend, in my judgment, to show very satisfactorily, that the appellant, though he had succeeded in having the note he had given for the $600 he owed the testator destroyed, was yet willing to recognize his liability for that amount, for the sake of having a provision inserted in the will, which would at least put at rest his title to the farm and the other property. The appellant now insists that when he signed the receipt he was ignorant that the item of $600 was included in the inventory. Until this is shown, the contrary is to be presumed. The only proof upon which he relies is in the testimony of Thomas Mesick, his son, and Nathaniel Smith, his nephew. Thomas was at the time of the transaction but 16 years old. It is scarcely to be supposed that such a boy, called to testify in relation to such transactions, after the lapse of seven years, would be able to recollect with much distinctness the circumstances which occurred. I can only regard his testimony as amounting to this: that he was at home when the business was done, and present with the parties a part, perhaps most, of the time, and that he has no recollection of hearing the receipt read, or seeing his father sign it. Smith was also a schoolboy at the time, and witnessed the execution of the will. He saw the appellant sign the receipt, at the time the will was executed, but did not hear it read. Such testimony can not be regarded as sufficient to control, in any respect, the effect of the instrument deliberately executed by the appellant. The appellant ought, therefore, to have been charged personally with the $600, and interest thereon from the date of the receipt.

The decree of the surrogate must be modified so as to conform to these views. Neither party should have costs upon the appeal as against the other.