ELIZABETH SNYDER, Appellant, v. SYLVESTER SNYDER and PHILIP R. SNYDER, as Executors, etc., of WILLIAM SNYDER, Deceased, Respondents.

*Executor — a claim originally existing in favor of an exeutor against the estate of the deceased must be presented to the surrogate for allowance, although it is held at the time by an assignee — Code of Civil Procedure, secs. 2739, 2740.*

After the death of the defendant's testator, one of the defendants, a son and one of the executors of the testator, assigned to the plaintiff, his wife, through a third person, all claims and demands which he had against the testator, or his estate, for services rendered, under a written agreement entered into between him and the testator in the lifetime of the latter, in supplying the testator with necessaries, and taking care of, and nursing him.

*Held,* that the plaintiff could not maintain an action in the Supreme Court, against the executor, to recover the amount due under this agreement; but that the claim should be presented to the surrogate for allowance as provided by sections 2739, 2740 of the Code of Civil Procedure.

Appeal from a judgment in favor of the defendants, entered upon the trial of this action by a referee.

The plaintiff is the wife of Philip Snyder, one of the defendants. She brings this action to recover for services rendered to William Snyder, deceased, the testator and the father of Philip.

On the trial of the action the plaintiff called as a witness defendant Philip, and, under the objection of the defendant Sylvester, proved the care which his wife and daughter took of his father. He also testified, under cross-examination, that he took the care of his father nine-tenths of the time; that sometimes his sons helped — sometimes his wife and daughter; that they all lived together. He further testified that he assigned this claim to his wife after his father's death. After some other witnesses had testified for the plaintiff she testified, under objection, that William Snyder was sick in 1874, 1875, 1876, 1878. The plaintiff then gave in evidence a written assignment dated February 19, 1879, assigning to George Barker an agreement made by William Snyder, January 17, 1874, agreeing to pay Philip for the services of Philip and his family in taking care of William since the time when he sold Philip a part of his farm; and all moneys due under the agreement and all claims and demands against William or his estate due from him for board, care or services of Philip or his family in taking care of him. Also an assignment of the same date from Barber to plaintiff of all the said agreement made by William, dated January 17, 1874, and all claims and demands which were assigned to Barber by Philip. These were received under objection.

The defendant then moved to strike out the evidence of Philip, as it then appeared that he was assignor to plaintiff. This was granted so far as it related to personal transactions and communications with deceased.

A witness called for the plaintiff then proved a written agreement by William, dated January 17, 1874, promising to pay Philip for the services of himself and family in taking care of him since the time he sold to Philip a part of his farm. The claim of the plaintiff was for services from August 7, 1874, to the death of the testator, December 4, 1878.

The referee found that during all this time Philip provided for the family and for the board of William, and the plaintiff and his own two sons and daughter and supplied the house, and that plaintiff performed and discharged the duties of wife, mother and housekeeper; that the extraordinary care required by William in his sickness was rendered by Philip, the plaintiff, Philip's two sons and his daughter; the most arduous part by the plaintiff.

The referee found that prior to this action Philip assigned to plaintiff (through Barber) the agreement aforesaid and all his claims for compensation and services of himself and family. That several times since 1874 and prior to his last sickness William promised to pay plaintiff, Philip's wife, for his board, when in usual health four dollars per week and from one to seven dollars per day when sick according to the services; that plaintiff had no separate estate and carried on no separate business.

He also found that from 1864 to August 1874, William boarded with Philip and Philip furnished board, washing and lodging to him at four dollars per week, for which William settled with Philip August 4, 1874

He held that the plaintiff was not entitled to recover for the value of the services rendered by her, as her services belonged to her husband, and that she could not recover as the assignee of her husband in the Supreme Court.

*Merritt King*, for the appellant.

*S. D. Halliday*, for the respondents.

LEARNED, P. J.:

We think that there is no sufficient evidence that there was any contract made with the plaintiff by William Snyder. The facts are against such a theory. In the first place, down to August 4, 1874, it is undisputed that the board, etc., were furnished by Philip and Philip was paid therefor. Next the written contract of January 17, 1874 is an agreement to pay Philip for the services of himself and family (which included the plaintiff) in taking care of William.

Again there is no reason for any change in this respect after August 4, 1874. William continued to live in Philip's house, that is, in the house which Philip occupied, the same as before. Philip and his family, including the plaintiff, continued to care for him in the same manner; although of course giving him increased attention, as he became more infirm. Philip, all this time, had the use of the farm; that is from 1864 down to the time of trial; without paying any rent. Or as Philip says: I have not paid him a dollar for the use of the land, but have in services in taking care of him.

This was a farm of seventy-five acres, after Philip had bought twenty-three acres from William; and Philip says his father gave him a deed of one-fifth of the seventy-five acres and of twelve acres for taking care of him and gave him also the stock and sheep. As a matter of fact, too, during all this time, Philip supplied the provisions and necessaries of life; and without dispute the labor of his two sons and daughter in the case of his father. It is not credible that there was a bargain by which the labor of the plaintiff was to be separated out, and performed on her own account. Nor is there any evidence to justify a finding that the plaintiff was to be paid for the provisions which Philip furnished and for the labor and services of Philip and of his sons and daughter. Yet if one construction urged by the plaintiff is to be followed, she was to be compensated, not for her own labor alone, but for that of the husband, his sons and his daughter, and for the provisions and necessaries he furnished. Because the alleged promises to plaintiff were to pay four dollars per week and extra when sick. And it is not pretended that this amount does not cover all that William received from Philip and his whole family.

There is no need of any such unreasonable construction. The testimony given that the testator promised to pay plaintiff so much is easily understood. It was a statement of the amount to be paid, not of the person to whom the amount was to be paid. The husband and wife were living together; both taking care, as was right, of the infirm father. There was no special intent to pay the wife. And this is very evident from the circumstance that by giving the husband the use of the farm the father was all the time paying him for these very services, or at least paying him in part. No one can fail to see that the use of the farm was, to the extent of its value, to pay for the care the old man needed. And that use was all the time going to Philip.

Furthermore, the assignment by Philip to Barber, and through him to the plaintiff, is additional evidence, if any were needed, that neither the plaintiff nor Philip considered that the claim for these services was hers in any other way than by assignment from him.

Against all these circumstances we have merely the testimony of Philip, of his two sons and his daughter, that they heard the old man say he would give the plaintiff four dollars per week, and

extras as above stated. Testimony to such conversations are of little weight, under the circumstances, against the undisputed facts. The daughter even testifies, on cross-examination, "he told my *father* and *mother* he would give them so much for taking care of him."

The referee finds that Philip assented to the arrangement made by the plaintiff. But he seems to rest that finding upon the assignment by Philip to the plaintiff through Barber. And this assignment is, on the contrary, a repudiation of any such arrangement. For, if the debt was contracted with plaintiff, Philip had nothing to assign.

We are of opinion, therefore, that the referee erred in his findings of fact, so far as they imply that there was any contract with the plaintiff.

Another very important question arises, upon which unfortunately this court disagreed when the case was here before, and that respects plaintiff's claim as assignee of Philip. The question is, whether an executor, having a simple claim against the estate on contract, can assign that claim to a third person, and thus authorize such third person to sue the executor or the executors. The defendant insists that any claim of one executor can be collected only by its being allowed by the surrogate. (Laws 1837, chap. 460, §§ 33, 37; Code, §§ 2739, 2740.)

As is well known, the executor could formerly retain property in satisfaction of his claim. (*Rogers* v. *Hosack*, 18 Wend., 319.) Now that right has been taken away; and the debt must be allowed by the surrogate. It would hardly be claimed that, if there were a sole executor, he could assign a claim which he had against the testator, and permit himself to be sued thereon; or, at least, that such suit would protect him on his accounting.

If there are two executors and one has the assets in his hands and claims a debt to be due to him he cannot retain in satisfaction; and an action against the other would be useless. If one has the assets and the other has none, and if the latter claims a debt to be due to him, the former cannot pay, because the money paid would still be assets, which the latter could not retain in satisfaction of his debt until his debt was proved before the surrogate. The delivery of assets by one executor to the other does not even

discharge the former. (*Mesick* v. *Mesick*, 7 Barb., 120.) The claim of the executor can only become effective upon allowance by the surrogate. (*Kearney* v. *McKeon*, 85 N. Y., 136.) And it is difficult to see why the assignee of an executor should stand in any better position than the executor himself. There are evident reasons why it would be dangerous to permit an executor to give, by assignment, a right of action at law upon a claim held by him against the estate.

The provisions of the Revised Statutes on this subject were intended to compel an executor to prove his claim before the surrogate on notice to the persons interested. Suppose he assigns his claim and allows himself to be sued and a judgment to be recovered against him, what would be the effect? If the judgment is to be of any use at all, then it can no longer be necessary to prove the debt before the surrogate, and those interested are deprived of the opportunity given by statute.

It is claimed by the plaintiff that the Court of Chancery had (and therefore that this court has) jurisdiction of controversies between executors in regard to claims of the estate. And some cases are cited in support of this view. *Decker* v. *Miller* (2 Paige, 149) was the case of a bill filed by two executors against a co-executor to compel the payment of a bond given by him to the testator. The defendant claimed the right to retain, in preference to other bond creditors. That was before the Revised Statutes. *Smith* v. *Lawrence* (11 Paige, 207) was an appeal from a surrogate's order and not a case of original jurisdiction. *Sanford* v. *Sanford* (45 N. Y., 723) was an action at common law on a note. The plaintiff claimed to be the owner in her own right, and the defendant insisted she was not. *Wurts* v. *Jenkins* (11 Barb., 546) held that an action may be maintained by executors against their co-executor to compel him to pay a debt which he owed the estate, necessary to pay a sum decreed to be due them for moneys paid on account of the estate. *McGregor* v. *McGregor* (35 N. Y., 218) was the revival of a fore-closure action by one executor against the mortgagor, a co-executor.

Thus not one of these cases shows that an executor, having a claim against the estate, may bring an action therefor against his co-executor. It is undoubtedly unsafe to lay down an absolute rule that this court has no jurisdiction of this class of actions. Peculiar

circumstances may arise when jurisdiction should be taken. But, take this simple case, and I think Philip should not be allowed to maintain an action against Sylvester, or against Sylvester and himself jointly. If Sylvester had voluntarily paid this claim to Philip, would not Philip have been obliged to account for the money so paid as assets? That is, before he could retain that money, he must have proved his claim before the surrogate. And if this be true of a voluntary payment it is necessarily true of a payment under a judgment to which only the two executors are parties. The character of the funds, whether in the hands of one executor or of the other, cannot be changed until a decree of the surrogate is had.

The finding of fact then must be reversed, so that it shall be found that the services were not rendered by the plaintiff on her own account but on account of Philip, and the indebtedness did not accrue to her. And the judgment must be affirmed, with costs, without prejudice to the presentation of any claim by Philip on his accounting.

Present — LEARNED, P. J., BOARDMAN and BOOKES, JJ.

Judgment affirmed, with costs, without prejudice to the presentation of any claim by Philip in his accounting; certain findings of fact reversed according to opinion.