(1 App. Div. 275.)

### THOMPSON v. HICKS et al.

(Supreme Court,. Appellate Division, Second Department.  February 4, 1896.)

1. LIABILITY OF EXECUTORS—DEFAULT OF COEXECUTOR.

Testatrix left to defendants and one T., her executors, a sum sufficient to realize a certain annuity bequeathed to plaintiff, directing the executors to invest the principal sum, and pay the income thereof to plaintiff.  Defendants thereafter gave money to T. from the funds of the estate to invest in bonds for the benefit of plaintiff, which sum T. converted to his own use, defendants making no effort to see that he performed his obligation.  *Held*, that defendants were chargeable with whatever loss plaintiff sustained.

2. SAME—SETTLEMENT OF ACCOUNTS—LIABILITY AS TRUSTEES.

Defendants paid to T., their coexecutor, money to be invested in bonds for the purpose of realizing an annuity bequeathed to plaintiff by testatrix, crediting themselves with such sum in their account presented on final settlement; and the decree on such settlement directed that the amount mentioned in the account "as cash paid to T., * * * and now held by him," be hereafter held by the executors, and invested for the payment of the annuity.  *Held*, that such decree charged defendants with the fund, and rendered them liable as trustees for any misappropriation thereof by T., unless they could show that the same occurred through no dereliction of duty on their part.

3. SAME.

Testatrix left to her executors in trust a sum sufficient to realize a certain life annuity bequeathed to plaintiff.  The annuity having been long unpaid, plaintiff sued the surviving executors, alleging that they had failed to invest the fund or pay the annuity, and had appropriated the same to their own use, and prayed judgment for the installments of the annuity unpaid.  *Held*, that the court was authorized to render a judgment charging the executors as trustees with the principal sum, and providing for payment of the annuity during plaintiff's life.

Appeal from special term.

Action by Isaac Thompson against George F. Hicks and another, individually, and as sole surviving executors and trustees under the will of Mary Jewett, deceased, to compel defendants to pay over unpaid portions of an annuity bequeathed to plaintiff by testatrix.  From a judgment for plaintiff, entered upon the decision of the court without a jury, and from an order amending the complaint on the trial, defendants appeal.  Modified.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

David Wilcox, for appellants.
Charles L. Hubbel, for respondent.

HATCH, J.  It appeared upon the trial that testatrix, Mary Jewett, died on January 31, 1887, leaving a last will and testament, whereby she constituted the defendants and one Benjamin K. True executors and trustees thereof.  The will was duly admitted to probate, and said persons duly qualified as such executors.  The questions that arise upon this appeal relate to the ninth clause of the will, which reads:

"Ninth. I give and bequeath to my executors and executrix, in trust, so much and such a sum of money as will enable them to invest the same (which they are hereby directed to do), and keep the same invested, and

therefrom produce a net sum of sixty dollars per year, which sum I hereby give and bequeath to the colored man, Isaac Thompson, now living with me, and which sum I direct to be paid to him in quarterly payments during his natural life; and the principal sum so invested I give and bequeath to the herein mentioned Benjamin K. True and to Allen Prescott True, share and share alike, or, in case of the decease of either of them before me, then to the survivor of them."

In the course of administration of the estate, the funds, as received, were placed in bank to the credit of the estate, checks upon which were payable only when signed by two of the trustees. About May 9, 1887, it was determined by the trustees to invest the sum of $1,500 for the purpose of securing payment of the annuity; and on that day the defendant George F. Hicks and True drew and signed a check, upon the estate account, for the sum of $1,500, and the same was delivered to True for the purchase of United States bonds. True never invested the money in any securities, but converted the same to his own use. He paid a part of the annuity irregularly, in small amounts, and died insolvent, about December, 1891. On October 30, 1888, a judicial settlement of the accounts of the executors was had before the surrogate of Richmond county. In the account as presented, the executors credited themselves with the sum of $1,500, and for the "amount set apart for annuity of Isaac Thompson as per Schedule E, 1st." Thereupon the court entered a decree settling the accounts, and directed "that the sum of fifteen hundred dollars mentioned in Schedule E, 1st, of the account of said executors and executrix, as cash paid to Benjamin K. True, executor, for purchase of United States bonds, being the amount set apart for the purpose of raising the sum of sixty dollars per annum for Isaac Thompson, and now held by Benjamin K. True, be hereafter held by said executors and executrix as trustees under and pursuant to the trust created by the ninth clause of the will of said testatrix, and that said sum be invested by them forthwith according to law, in the name of said executors and executrix, as such trustees, and kept invested in their names to answer the terms of said trust." Up to the time of entering this decree, neither of defendants has interested himself in the slightest to see that True executed the commission by investment of the funds intrusted to him. After the entry of the decree, defendant George F. Hicks, acting for himself and his co-executor, demanded the money of True or its investment, but did not produce compliance with either demand. About May 21, 1889, Thompson instituted proceedings to punish True for contempt for failure to comply with the decree directing him to invest the money. This seems not to have proceeded beyond an order to show cause and its service, and no adjudication was had thereon. The court below found that defendants and True had neglected to invest the money and produce the annuity, and that the defendants were negligent in not calling True to account, and attending to the investment of the money in the bonds, and adjudged that they be charged as trustees with the sum of $1,500; directed that said sum be forthwith invested so that it shall produce a net income of $60 per annum, which sum shall be paid to plaintiff during his

natural life, in quarterly payments, beginning January 1, 1895; and that plaintiff have judgment for the unpaid annuities and costs, amounting in the aggregate to $389.35.

It thus appears from the evidence and findings that the money which was paid to True came from the possession of the defendants, and was paid to him from the funds of the estate, in pursuance of an agreement made by defendants so to do. The case is therefore brought within the rule that where the executor or trustee sought to be charged has received the funds of the estate, and voluntarily delivers them over to an associate, or does any act by which they were brought under the sole control and management of the latter, where otherwise he would not have received them, such executor or trustee so delivering the funds is liable for any loss that may be sustained as a consequence of such act. Croft v. Williams, 88 N. Y. 384; Bruen v. Gillet, 115 N. Y. 10, 21 N. E. 676. We find no case, upon the facts here presented, where this rule has been departed from. The evidence disclosed that True was a broker, and dealt in the securities in which it was proposed to invest the money. There was no reason or excuse for delay in making the investment, and it seems to have been expected that it would be done at once; yet, in the continual presence of this expectation, defendants did nothing, either by way of insistence or suggestion that True perform the obligation charged upon him and them, but remained perfectly passive in the matter, until aroused to action by the decree of the surrogate, nearly 18 months later. Even then no decisive steps were taken. The cestui que trust was making his wants known crudely, but plainly, and with little light regarding his legal rights. True failed to pay the annuity promptly, sent one worthless check, and it was only by the most persistent effort that anything was forced from him. At some time, about this period, he must have been paid his fees as executor, amounting to $1,000; and this payment must have come through defendants, as it does not appear that any moneys of the estate were collected by True individually, and money could only be obtained from the bank on the signature of two. With this condition of ignorance on the part of the cestui que trust, and evidence of financial weakness on the part of True, defendants were called upon to exercise prudence, care, and diligence commensurate with known conditions for the protection of this fund. By no reasonable construction can we say that they did. On the contrary, there was a laxness and inattention to a plain duty, which led the court below to a finding of negligence in discharge of their trust, and we think this finding is supported by the evidence. It is sought to defeat this conclusion by the claim that the decree of the surrogate is conclusive respecting the delivery of the money to True, and exonerates defendants from liability on account thereof. By the Code of Civil Procedure (section 2742), a judicial settlement of accounts by a surrogate's court is made conclusive of four things: First, that the items allowed to the accounting party for money paid to creditors, legatees, next of kin, necessary expenses and services, are correct; second, that the party has been charged with all interest on money embraced in the

account for which he is legally chargeable; third, that the money charged as collected on debts stated in account is all that was collectible; fourth, that allowances for decrease and charge for in-' crease in value of property were correctly made. We find nothing here which settles conclusively that True alone was chargeable with this money. So far as the account appears, it does not show that True had the money, and defendants are simply credited with the sum set apart. The decree recites that the schedule shows cash paid to True for the purchase of bonds, and recites that he now holds it. But these recitals do not have the force, nor are they intended to have, of relieving defendants from responsibility in connection with the fund, or of thereafter preventing inquiry as to how this fund came in True's hands, and nothing in the statute gives it such effect. The substantial effect of the decree is to charge defendants as trustees with the sum, and direct its investment to answer the terms of the trust. The force of this unexplained is to charge defendants with the fund. They are not to be exonerated by showing that True had the money, unless they go further, and show that he came by it under such circumstances as charge him alone, or that they have been guilty of no dereliction of duty respecting it. In re Niles, 113 N. Y. 547, 21 N. E. 687; 1 Perry, Trusts, §§ 417–419; 1 Lewin, Trusts, §§ 263–266. If such be the fact, it is idle to say that the decree is conclusive of plaintiff's right to show that in fact defendants are alone responsible for the money being in True's hands.

It is further claimed that no power to amend the complaint existed in the court. It is true that the complaint was framed upon the theory of a recovery for the annuities due and unpaid. Such is its prayer for relief. But all the facts were pleaded which entitled plaintiff to a recovery, and the relief granted was fairly within the scope of the issue. The parties tried the action upon the theory that defendants were to be charged for the money sufficient to pay the annuity or be relieved entirely. All the evidence was introduced without objection, and the court was authorized to permit any judgment consistent with the complaint and embraced in the issue. Code Civ. Proc. § 1207; Hale v. Bank, 49 N. Y. 626; Thacher v. Association, 46 Hun, 594.

The complaint alleged, in its seventh paragraph, that defendants had failed and neglected to invest the money or pay the annuity, and had illegally appropriated the money to their own use and benefit. This alleged negligence and the amendment allowed did not change the cause of action. It embraced a new allegation of negligence, but did not bring in a new cause of action. It was therefore within the power of the court to allow it. Davis v. Railroad Co., 110 N. Y. 646, 17 N. E. 733. If it were otherwise, it does not appear that defendants objected to the order amending the complaint. The order recites that the application to amend was made upon the trial in order to conform it to the evidence and facts. For aught that appears, defendants consented to the amendment, and they cannot now be heard to object thereto.

While we reach the conclusion that the defendants are charge-

able with the annuity secured to be paid by the terms of the will, we think the judgment itself is unnecessarily onerous in compelling the investment of this fund. The will provides for the payment of the annuity during plaintiff's life, and upon his death the principal sum is to be divided between Benjamin K. True and Allen Prescott True, share and share alike. As between Benjamin K. True and these defendants, no claim can be made for his distributive share; and, so far as the present controversy is concerned, it is not necessary to determine, nor could it be from the present record, what the rights of Allen True are. It is sufficient now to provide for the payment of the annuity, and this may be done by a modification of the judgment providing that defendants give a suitable bond, secured by a mortgage, upon unincumbered real estate, for the payment of the annuity, in lieu of the investment of the $1,500. This modification has the sanction of authority. Earle v. Earle, 93 N. Y. 104.

Judgment appealed from should be modified as above, security to be approved by a justice of the supreme court, and, as modified, affirmed, with costs. All concur.