In the Matter of the Estate of WILLIAM P. SLENSBY, Deceased.

Surrogate's Court, Kings County, October 28, 1938.

*Macklin, Brown, Lenahan & Speer* [*Charles F. Welch* of counsel], for Laura E. Mutteen, as executrix and trustee, petitioner.

*Jacob A. Visel*, for Flossie Slensby, as executrix, etc., of Joseph P. Slensby, deceased executor and trustee.

*Robert E. Moffett* [*Edward J. Bausch* of counsel], for William Slensby, Robert Slensby, Helen Teichman and Florence Dean, remaindermen under trust, objectants.

*Hines, Rearick, Dorr & Hammond*, for Arthur S. Waldron, legatee, objectant.

WINGATE, S. The problem posed in the present proceeding concerns the responsibility of an executor or administrator for the loss to an estate by reason of the malefactions of a cofiduciary.

William P. Slensby died on April 20, 1922. His will was probated in this court about six weeks later. It bequeathed $2,500 in general legacies, gave two-sevenths of the residue outright each to his daughter, Laura E. Mutteen, and his son, Joseph P. Slensby, two-sevenths in trust for the life benefit of his son, Robert Slensby, with remainder to the wife and children of the latter; and the final one-seventh in trust for his grandson, Arthur S. Waldron, with the principal payable to him when he attained the age of twenty-five years.

Laura and Joseph were named as executors and trustees. They were accorded no discretionery powers of investment. Both accepted letters testamentary. Neither expressly qualified as trustee. No accounting has ever been had. The trusts were never set up. Joseph died intestate on December 12, 1937, having been predeceased by Robert, who died on December 5, 1936. Upon the death of Robert, the unerected trust terminated and his children became entitled to the distribution of its theoretical principal avails. This is a compulsory proceeding instituted by these remaindermen.

It appears from the records in the transfer tax proceeding that the decedent, at the time of his death, was seized of four parcels of real estate possessing an aggregate value of $62,250; that he had five bank accounts, the deposits in which totaled $14,525.11; was possessed of four real estate bonds and mortgages worth $10,797.02, and corporate and government bonds possessing a market value of $12,718.74. The aggregate deductions as allowed in the proceeding totaled $2,791.35, leaving a net estate (exclusive of wearing apparel) of $97,499.52.

In her present account the coexecutrix fails to charge herself with any item of these principal assets except a deposit of $1,000 on the sale of one of the parcels of real property. She shows income receipts totaling $14,579.24, against which and the noted $1,000 she charges miscellaneous disbursements (including the funeral bill), arriving at a net balance of $66.19.

Her position, adopted on the trial, was that although she had qualified as coexecutrix and had read and understood the provisions of the will, she did not realize her responsibilities as a cofiduciary and left the entire conduct of the affairs of the estate to her brother, who was a lawyer, and that the latter had embezzled the principal assets of the estate in their entirety. She admitted, however, that after their qualification she went to the five banks in which the decedent had deposits and joined him in the withdrawal of their total avails, aggregating $14,525.11, which she turned over to him; also, that upon the sales of the several parcels of real estate, purchase-money mortgages were taken back in the names of both executors and that she subsequently executed satisfaction pieces thereof upon their payment by the several mortgagors. The exact amounts of such sums has not been made to appear, but enough was demonstrated to show that the moneys so received exceeded $25,000 in amount.

It also appeared that funds of the estate were used to replace a mortgage in the sum of $10,000 on the home of the accountant and that $6,000 was similarly loaned on the house of a relative in New Jersey.

Despite the accountant's assumption of the role of an utter simpleton, certain portions of the composite demonstration were somewhat dissonant with this character, it having been admitted that she acted as general managing agent for all of her father's real property for a number of years prior to his death, caring for the rentals, repairs, taxes, etc., thereof, and that she continued so so act for a number of years after her qualification as executrix in relation to the real property holdings of the estate. She also took care to see to it that her benefit under the will was promptly paid to her.

It was conceded at the trial that if the accountant is surchargeable, the sum of $25,000 is the amount of the loss sustained by the objectors.

The subject of the accountability of a fiduciary for the derelictions of a cofiduciary in the absence of active participation therein, has been the subject of repeated judicial pronouncement since time immemorial. A study of these decisions indicates that their formulation has involved the application and definition of three basic principles of the law respecting the administration of estates. The first of these principles is that every estate fiduciary, by virtue of his office, is entitled to the custody of the assets of the estate or fund. When there are two or more fiduciaries, each possesses an equal right in this regard and the recognition and effectuation by one, of such right of another, is not in and of itself an adequate basis upon which to predicate a surcharge on the theory of neglect of duty by the one yielding to the asserted right of the other.

The second basic principle is that a " trustee should act in relation to a trust property with reasonable diligence, and in case of a joint trust he must exercise due caution and vigilance in respect to the approval of, and acquiescence in, the acts of his co-trustees, for if he should deliver over the whole management to others, and betray supine indifference or gross negligence in regard to the interests of the *cestui que trust,* he will be held responsible." (*Earle* v. *Earle,* 93 N. Y. 104, 113.)

Finally, it is primary that every fiduciary " is chargeable with all the assets of the deceased which have been actually received by him " or " which have come to his hands." (Surr. Ct. Act, § 264; *Matter of Storm,* 28 Hun, 499, 500; *Mesick* v. *Mesick,* 7 Barb. 120, 124.)

Three situations are conceivable in this connection, and the language employed in their adjudication has, in certain instances, been superficially contradictory, if the reader fails to recollect the different basic principles which are applicable. The first two of these situations relate to the manner of holding of the particular asset in question prior to the time it came into the unrestricted possession of the cofiduciary by whom it was misapplied. In this regard, a distinction is to be drawn between a case in which the item in question was an asset or the proceeds of an asset, which was in the actual physical possession of both cofiduciaries prior to the time when its unrestricted control was intrusted to one of their number and one in which it was merely one which they were entitled to reduce to possession, which act had not actually been performed. In the former situation, a cofiduciary who surrenders

to his associate the asset or proceeds thereof, of which he had previously held joint ownership, will be held liable, if such associate wastes or converts it after he had achieved sole custody thereof. Where, however, the asset had not previously been reduced to the possession of either fiduciary, one will not be held responsible for the devastavit of his cofiduciary merely because he did not insist upon receiving personal or joint control thereof.

The final situation looks to the act or neglect of the fiduciary who is not in possession of the asset which has, as an initial matter, been reduced to possession by his associate with his acquiescence. In such a situation if he has been guilty of gross negligence in permitting the continuance of sole control by his cofiduciary, and loss results, he will be held liable.

In the majority of decisions it is sufficient for the purpose of citation of authority for legal positions adopted to cite the name and volume of the precedent upon which reliance is placed, together with the page upon which the statement of the pertinent principle appears. In the present connection this is inadequate, since in a majority of instances, the rulings covering all three of the noted possible situations appear on the same or contiguous pages of the pertinent opinions. In view of the apparent confusion of conception of the present litigants respecting the controlling rules of law on the subject, the court deems it the part of wisdom to indicate the language in the governing precedents which demonstrate the results which are attainable in the three situations noted.

The first set of excerpts concerns the situation in which an asset of the estate which has not previously been reduced to possession by either cofiduciary comes into the hands of one alone, either with or without the assent of his associate. In such a situation, unless more be demonstrated, such non-receiving cofiduciary is not liable for its loss.

" The general rule is that the executor is responsible for his own acts, and not for those of his associate; * * *. If the executor is merely passive and simply does not obstruct the collection or receipt of assets by his associate, he is not liable for the latter's waste." (*Croft* v. *Williams*, 88 N. Y. 384, 388.) Language identical with the last quoted sentence will be found in *Wilmerding* v. *McKesson* (103 N. Y. 329, 338) and *Bruen* v. *Gillet* (115 id. 10, 14) and with that in the first clause of the first sentence in *Sutherland* v. *Brush* (7 Johns. Ch. 17, 23).

*Bruen* v. *Gillet* (115 N. Y. 10) also contributes the following (at p. 16): " In cases where a debt due to the trust estate by a debtor has been paid to one of two or more trustees and the debtor has required, as a condition of such payment, that a receipt should

be joined in by all the trustees, in such case the signing of a receipt by the trustees who did not personally receive the money, has been held to be merely formal or necessary for the purpose of obtaining the money from the debtor, and that they who did not receive the money, in fact, were not bound by their written admission of its receipt for the purpose named, and were not liable for the failure of the one who did, in fact, receive it to properly apply it."

A practical application of this principle is found in *Matter of Provost* (87 App. Div. 86, 91). In that case the only asset was certain insurance payable to the estate. In its collection, the insurance company made payment by a check drawn to the order of both executors. Both also signed a receipt for the payment. One indorsed the check to the other who misappropriated the proceeds. It was held that the passive party who had merely permitted the money to be reduced to the sole possession of her coadministrator could not be held liable for the devastavit.

Another case which is commonly cited as authority for the same position, even by the Court of Appeals itself, is *Paulding* v. *Sharkey* (88 N. Y. 432). The question there presented concerned the proceeds of sale of certain real estate owned by the decedent. There were three executors named, Gardner, Marvin and Sharkey. All joined in a conveyance of the property. The check for the purchase price was made payable to Marvin who indorsed and delivered it to Gardner who misappropriated it. The court below held that the estate of Gardner alone was liable. This appeal sought to review the judgment only in so far as Sharkey was concerned.

In affirming as to Sharkey, the court said (at p. 434): " The co-executor had an equal right with Sharkey to possession of the money, and it came into his hands, therefore, without fault on the part of the respondent."

It is, of course, obvious that as a matter of strict fact, the actual determination furnishes no authority for the position for which it is cited. Such would be the case had the effort been to hold liable Marvin, who indorsed the check. The mode of reference to the decision by the courts, however, further fortifies the general principle noted on an approximation of the rule of *stare decisis*.

The second principle, that when a coexecutor turns over to his associate property which has actually previously been reduced to his fiduciary possession, he will be held responsible for a misapplication thereof, has been of even more frequent application.

In *Croft* v. *Williams* (88 N. Y. 384) the court says (at p. 387): " The two sums of $800 and $636.12 charged to the executor, were admitted to have been received by him. As he accounted for them

in no other manner than by delivering them to his co-executor, by whom they were misappropriated, he established no right to be credited with them in his account."

The court adds (at p. 389): " if he receives and misapplies the money, or does any act by which it gets to the hands of the other who diverts or wastes it, and but for which act the latter would not have had it, a liability to make good the loss results."

The leading case on this phase of the subject is *Bruen* v. *Gillet* (115 N. Y. 10), in which certain moneys were collected by one of two assignees for creditors and deposited in their joint names. They were subsequently withdrawn on their joint check and turned over to one who misappropriated them. In holding the other liable, the court said (at p. 14): " We have lately held that one executor (and I think the rule is the same with other trustees) is responsible for his own acts and not for those of his associate; and if the latter collect and misapply the money, the executor who has not received it is not liable for the waste. If he is merely passive and simply does not obstruct the collection by his associate, he is not liable for the latter's waste, if guilty of no negligence himself. But where one executor or trustee receives the funds of the estate and either delivers them over to his associate or does any act by which the funds come under the sole possession and control of the latter, and but for which he would not have received them, the executor or trustee is liable for the loss which is sustained in consequence of such action."

As illustrative of the basis and extent of this principle, the court continues (at p. 15): " In *Williams* v. *Nixon* (2 Beav. 472), two executors sold out stock belonging to the estate, and the proceeds were received by one. It was held that the other was responsible for its misappropriation, because the stock had been in their joint possession and each was responsible for the proper application of the funds arising from the sale. The principle upon which the liability of one trustee for the act of his co-trustee, under these circumstances, arises, is that the property, the fund, the assets of the estate having once come into the joint control or the joint possession of the trustees, it is the duty of each trustee to see to it that the fund does not go out from under his control or possession, excepting as it is applied to the fulfillment of the trust. Thus says Lord REDESDALE in *Joy* v. *Campbell* (1 Sch. & Lef. at 341): ' If a receipt be given for the mere purposes of form, then the signing will not charge the person not receiving it, but if it be given under circumstances purporting that the money, though not actually received by both executors, was under the control of both, such a receipt shall charge; and the true question in all those cases seems to have been

whether the money was under the control of both executors. If it was so considered by the person paying the money, then the joining in the receipt by the executor, who did not actually receive it, amounted to a direction to pay his co-executor, for it could have no other meaning; he became responsible for the application of the money just as if he had received it.' "

The court concludes (at p. 17): " The act of Gillet in signing the checks by which these moneys, then under their joint control, were drawn from the banks and transferred to the individual and separate control of Hall was an act but for the doing of which the moneys would not have been received by Hall, and Gillet must be held responsible for any amount which was lost in consequence of such act."

A typical example of the application of this principle is found in *Thompson* v. *Hicks* (1 App. Div. 275). The funds of the estate were in a bank account which required the signatures of both executors for withdrawal. They signed and gave to one of their number a check for $1,500 for the purchase of bonds to create an annuity fund. The one to whom it was given misappropriated the money. In holding the coexecutor liable, it was said (at p. 280): " The case is, therefore, brought within the rule that where the executor or trustee, sought to be charged, has received the funds of the estate, and voluntarily delivers them over to an associate, or does any act by which they are brought under the sole control and management of the latter, where otherwise he would not have received them, such executor or trustee so delivering the funds is liable for any loss that may be sustained as a consequence of such act."

A like result is encountered in *Matter of Storm* (28 Hun, 499). There an executor turned over to his coexecutor the sum of $1,200 for the satisfaction of a legacy. The latter misappropriated the money. In affirming an order holding him liable, the court said (at p. 500): " While an executor is not chargeable for a *devastavit* of his coexecutor, yet he is chargeable with all the assets of the deceased which have been actually received by him. He is not discharged from liability by showing that he intrusted such assets or any part thereof to his coexecutor for the purpose of administration. It was his duty to conduct such administration himself, and he is answerable for his coexecutor in the same manner as he would have been for a stranger to whom he had intrusted such assets. In other words, he parted with the possession of the funds of the estate at his peril. The rule is well settled, and is too important to be relaxed."

An identical determination on substantially similar facts is found in *Mesick* v. *Mesick* (7 Barb. 120, 124).

The final pertinent principle, that despite the fact that liability may not be predicated upon the act of one executor in permitting a coexecutor to assume initial exclusive control of an asset, yet subsequent negligence on his part may result in chargeability for misappropriation, is noted in many decisions. A few typical excerpts of this variety are worthy of repetition.

" While an executor is not liable for acts of a coexecutor which he has not the means of preventing or guarding against, or from which he has no reason to apprehend danger to the estate, he is still bound to some degree of watchfulness and care, even in respect to the acts of his coexecutor or cotrustee." (*Earle* v. *Earle*, 93 N. Y. 104, 112.)

Both *Croft* v. *Williams* (88 N. Y. 384, 389) and *Wilmerding* v. *McKesson* (103 id. 329, 338) contain the statement that where a cofiduciary " knows and assents to such misapplication, or negligently suffers his coexecutor to receive and waste the estate when he has the means of preventing it by proper care, he becomes liable for a resulting loss." To similar effect, see *Adair* v. *Brimmer* (74 N Y. 539, 566).

These and consonant statements are but a reiteration of the principle enunciated in 1823 in *Sutherland* v. *Brush* (7 Johns. Ch. 17, 22) that " Each executor is liable only for his own acts, and what he receives or applies, unless he hands over the moneys collected or received to his co-executor, or joins in the direction or misapplication of the assets."

A final quotation respecting the burden of demonstration in cases of this type may not be amiss. This is to the effect that " it may be laid down as a principle, that if two guardians or other trustees join in a receipt for moneys, it is *prima facie*, though not absolutely conclusive evidence, that the money came to the hands of both; that one trustee may show, by satisfactory proof, that the joining in the receipt was necessary, or merely formal, and that the moneys, in fact, were paid to his companion; that without such satisfactory proof, he must be liable to the *cestui que trust*." (*Monell* v. *Monell*, 5 Johns. Ch. 283, 296.)

The application of these rules of law to the facts of the case at bar appears reasonably obvious. Surcharge is sought by reason of transactions of three varieties, namely, *first*, the act of the present accountant in participating in the withdrawal of the bank accounts of the deceased and permitting her coexecutor to assume uncontrolled custody of the funds; *second*, by reason of her satisfaction of the purchase-money mortgages received on the sale

of the testator's realty and her surrender of the proceeds to her cofiduciary; and, *third,* by her participation in the loan to herself of $10,000 of estate funds on a mortgage on her own property and of $6,000 on the property of a relative in New Jersey.

On the first principle hereinbefore considered, no surcharge may be predicated upon her action in respect of the bank accounts. Their avails were general assets of the estate which, at the time of their withdrawal from the bank, had not been reduced to possession by either fiduciary. The situation is indistinguishable from that adjudicated in *Matter of Provost* (87 App. Div. 86) where insurance proceeds were collected by both executors and intrusted to one of their number. Under the noted rule of *Monell* v. *Monell,* the demonstration of the giving of a receipt for the funds signed by the present accountant whether in the form of joint signature of a draft or otherwise, cast upon her the burden of demonstrating that such act was formal only and that she did not in fact exercise control over the fund. This burden has been met. Nor are there any facts demonstrated which are sufficient to invoke the application of the principle of liability by reason of subsequent negligence. In this respect the burden of proof rested upon the respondents and it has not been sustained.

A different situation exists respecting the bonds and mortgages which were received by the coexecutors upon the sales of the parcels of real estate. These were made payable to the executors jointly and constituted assets in the hands of both which differed in no legal aspect from the situation which would have been created had such sales been made for cash and the proceeds deposited in a bank account in the names and payable only upon the order of both executors jointly. Had such deposit been made, which was the situation in *Bruen* v. *Gillet* (115 N. Y. 10), it would have created merely the relation of debtor and creditor between the bank and the executors (*Matter of Egan,* 258 N. Y. 334, 339; *Genesee Wesleyan Seminary* v. *United States Fidelity & G. Co.,* 247 id. 52, 55; *Baldwin's Bank* v. *Smith,* 215 id. 76, 82); in other words, the credit would have amounted merely to a chose in action in the possession of the executors (*Matter of Delaney,* 256 N. Y. 315, 320), which differs in no respect from any similar right which they might possess in their representative capacity. (*Matter of Baker,* 146 Misc. 437, 439.) The chose in action actually created by the bond and mortgage given to both was legally indistinguishable from such a chose in action created by a bank deposit. (*Matter of Rubinstein,* 169 Misc. 273.) It was a new asset created by the sale of the original asset which had belonged to the testator and vested in the fiduciaries as such and became their property. The

actual physical possession of the indicia of ownership of such new asset would be just as immaterial as would the possession of the pass book of the bank account.

When, therefore, the present accountant participated in the collection of this chose in action which had come into her joint fiduciary possession and delivered its avails to the sole custody of her coexecutor, she surrendered assets of the estate which had actually come under her fiduciary control and became accountable for their subsequent misappropriation. (*Bruen* v. *Gillet*, 115 N. Y. 10; *Thompson* v. *Hicks*, 1 App. Div. 275; *Matter of Storm*, 28 Hun, 499; *Mesick* v. *Mesick*, 7 Barb. 120, 124.)

There was certain indefinite testimony by the accountant to the effect that upon the sale of the realty certain sums were paid in cash by the purchaser. As to such sums, if identified, the first noted principle would have applied. Under the doctrine of *Monell* v. *Monell*, however, the burden was cast upon her to identify them. She failed in this regard. Her testimony, in any event, demonstrated that two purchase-money mortgages of $15,000 and $11,000 respectively were received. This total of $26,000 is more than the sum necessary to repair the stipulated requirement of $25,000 needed to indemnify the respondents. In this respect, therefore, the accountant must be surcharged.

The final question concerns the two mortgages which were placed on her own and on the New Jersey property with the approval of the present accountant. Since the latter was an unauthorized investment (*Ormiston* v. *Olcott*, 84 N. Y. 339, 342; *Matter of Denton* v. *Sanford*, 103 id. 607, 612; *Matter of Reed*, 45 App. Div. 196, 202; *Matter of Poulson*, 155 Misc. 625, 627), the accountant is surchargeable by reason thereof. The same applies to the loan of the estate funds to herself on a mortgage on her own property. (*Carrier* v. *Carrier*, 226 N. Y. 114, 125; *Strong* v. *Dutcher*, 186 App. Div. 307, 312; *Matter of Cady*, 211 id. 373, 379; *Matter of Young*, 249 id. 495, 500; *Matter of Rutherford*, 5 Dem. 499, 507; *Matter of Randolph*, 134 N. Y. Supp. 1117, 1119; affd., 150 App. Div. 902.)

It follows from the foregoing that the accountant is surchargeable with sums considerably in excess of the $25,000 amount which, it has been stipulated, will indemnify the respondents. In view of such fact and of that stipulation, the surcharge will be limited to a sum which, after the solution of all unpaid expenses of the estate and of this accounting, will net the respondents this stipulated sum and to that extent the objections are sustained, with costs.

Enter decree on notice in conformity herewith.