*982 OPINION OF THE COURT
C. Raymond Radigan, J.
This is an application by 1 of 2 cofiduciaries for advance payment of attorneys’ and accountants’ fees, commissions and partial distribution. The only matters currently being considered are the questions of advance payment of fees and commissions.
I. PROFESSIONAL FEES
With regard to fees, the petitioner argues that as an executor she is authorized to apply funds for proper expenditures without obtaining prior court approval, but that her brother as a coexecutor and presumably as a cosignatory on estate accounts has frustrated such rights by refusing to agree to advance $150,000 for attorneys’ and accountants’ fees. The coexecutor does not as such oppose the advance payment of professional fees, provided such payments deal exclusively with administration rather than litigation services, and that it is based upon services actually performed. Apparently based upon statements made by his sister’s attorneys, he concludes that the major portion of the $150,000 requested relates to litigation expenses.
Fiduciaries have the power to employ attorneys to advise them in the administration of estates (Matter of Mann, 41 AD2d 861). Moreover, where there are cofiduciaries, it is normally the right of each fiduciary to employ separate counsel; however, the practice tends to lead to excessive fees which the Surrogates have sought to discourage by limiting fees to those which would be deemed reasonable for the service of a single attorney representing all of the fiduciaries (Matter of Bloomingdale, 172 Misc 218). With regard to the right to advance expenses of administration including attorneys’ fees, EPTL 11-1.1 (b) (22) authorizes the payment of administration expenses including reasonable counsel fees by the fiduciary. Moreover, where there are multiple executors, the law, at least in theory, is clear that the act of any one of them with respect to the administration of the estate is deemed the acts of all of them and each has a joint and entire authority over the estate (Matter of Hammer, 237 App Div 497, affd 261 NY 677; Geyer v Snyder, 140 NY 394; Barry v Lambert, 98 NY 300). However, as observed in the Hammer case, while this may be the theory, in practice the estate checking account *983 usually requires joint signatures which effectively prevents unilateral action.
Although trustees must normally act jointly, EPTL 10-10.7 codified the above case law pertaining to executors by providing that they may “exercise a several power” alone. However, this court has previously determined over the opposition of the daughter that the provisions of the will requiring any dispute between the coexecutors to be submitted for review to two advisors is a valid limitation on her powers (Matter of Rubin, 143 Misc 2d 303). Similarly in Matter of Riker (NYLJ, Mar. 10, 1982, at 12, col 5), the court held that a veto power given to one trustee over her cotrustees was a valid limitation on their powers even though EPTL 10-10.7 permits majority control by fiduciaries. As pointed out in the Riker case, EPTL 10-10.7 authorizes departures from its directions by providing for contrary express provisions in the controlling instrument. Accordingly, there appears no doubt that under this will the son has the right to dispute any fees his sister seeks to pay her attorneys and accountants and to have the matter reviewed by the advisors.
However, even in the absence of limitations on the powers of a cofiduciary, the unilateral right of coexecutors to act should be subject to review by their cofiduciaries since it is the duty of each fiduciary to insure that the fund does not go out from under his control excepting as it is properly applied to the fulfillment of the trust (Croft v Williams, 88 NY 384, 388; Bruen v Gillet, 115 NY 10, 21; Matter of Slensby, 169 Misc 292). Furthermore, if he negligently suffers his cofiduciary to receive and waste estate assets when he has the means to prevent it by proper care, he comes personally liable for the loss (Wilmerding v McKesson, 103 NY 329; Matter of Niles, 113 NY 547; Matter of Slensby, supra). In Matter of Lippner (135 Misc 2d 34), a cofiduciary authorized the advance payment of attorneys’ fees to an attorney-cofiduciary without court order as is permissible under SCPA 2111 (2). However, the court observed that the independent cofiduciary permitted such advances to be made at his peril and subject to being surcharged for improper care. All that the coexecutor has requested in this case is an opportunity to review the merits of the application which should not be denied him. Accordingly, the daughter’s application for a direction by the court that she has the unilateral authority to advance fees to her attorney and accountants is denied and in the alternative, if she be advised to pursue her request for a payment of fees, *984 she will be required to provide a competent affidavit of services which will permit a satisfactory review of such services by her coexecutor. If any fee he is agreeable to is not acceptable, the matter is to be submitted to the advisors for their review and determination. The court does not consider the son’s partial waiver of the testator’s directions to the advisors to act in cases of dispute (which he has limited to the fee application only) to be competent (see, Restatement [Second] of Trusts § 185). Should the daughter challenge the advisors’ directions in this regard, the court will take under advisement a review of the advisors’ discretion. However, the fixation of an interim fee has substantial practical difficulties because of the inability to evaluate the results achieved as well as the benefits, if any, to the estate until all proceedings are terminated (Matter of Harris [Guaranty Trust Co.], 277 App Div 1030; Matter of Wheeler, 25 Misc 3d 933, affd 14 AD2d 549). In both the Harris and Wheeler cases the court instead resorted to a payment on account as a means of some relief in unusual cases where the proceedings were of an extended nature and much work had been accomplished. The difficulties in fixing an interim fee here is particularly burdensome since the major effort of the daughter to date has been to commence a construction proceeding in which she has been unsuccessful in seeking to avoid limitations on her power provided in the will by her father. While she is appealing this court’s determination, any benefits to the estate to .be derived from such an appeal as distinguished from her own personal benefit is questionable.
In Matter of Fraser (165 App Div 441), the court permitted 1 of 3 executors to be reimbursed by the estate for a separate attorney hired by him in addition to the law firm already conducting estate matters. However, the court stated (at 443) "The multiplication of attorneys is of course to be deprecated, and the better course undoubtedly is that all of the executors shall be represented by the same attorneys. * * * Whether or not he shall be allowed the expense incurred in [hiring a separate attorney] must depend in each case upon his good faith, the reasonableness of his acts and the benefits accruing to the estate therefrom.” Accordingly, it is generally held that if services rendered by counsel separately employed were of benefit to the estate as a whole, his legal fees are usually justified as a charge against the estate (Conway v Parker, 250 NW2d 266 [ND]; 31 Am Jur 2d, Executors and Administrators, § 536 [1967]). Conversely, where the services performed on *985 behalf of a fiduciary are beneficial to him in his individual capacity only, payment must be made by the fiduciary personally or out of his share of the estate (Matter of Burlein, 26 AD2d 667). All of these determinations, however, were made after the fact. What the daughter desires here is really fees to finance future litigation. However, it is axiomatic that attorneys’ fees cannot be allowed for future services (Matter of Tomany, 258 App Div 1060; Matter of Starbuck, 225 App Div 689). One of the arguments the daughter makes is that there is no need to evaluate her fees since her share in this estate is more than ample to secure any advance of fees. However, the court must treat this either as an application for interim fees or as an advance distribution, since each has different consequences. If treated as an advance distribution, this will trigger a requirement of pro rata distribution to others and there has been an argument that advance distributions of any large amount may possibly encroach upon the liquid assets necessary for payment of estate obligations. Of course, the daughter may abandon her application for an advance payment of fees entirely in view of this decision and instead proceed on her application for an advance distribution from which she could pay fees and seek reimbursement at the conclusion of the estate.
II. ADVANCE COMMISSIONS
Prior to the enactment of SCPA 2311, application for the payment of commissions on account could only be commenced on notice to interested persons under former Surrogate’s Court Act § 285-c (presently SCPA 2310 with minor changes). With the enactment of SCPA 2311 on the recommendation of the Bennett Commission on the Law of Estates, the same application could be made ex parte. Otherwise the two sections duplicate each other in many respects. Both sections normally limit the payment on account to receiving commissions and require the filing of a bond to secure payment with some exceptions. The present application being on notice, falls under SCPA 2310, and requests estimated receiving commissions of $130,000, which is approximately one half of the total estimated commissions claimed as a deduction on the Federal estate tax return.
The son opposes the application essentially on the basis that the calculation of commissions includes partnership property which is not commissionable until received by the estate, and *986 further that since the partnership consists primarily of realty, it is not commissionable until actually sold.
The son is correct in that normally on the death of a partner, the right to specific partnership property vests in the surviving partner (Partnership Law § 51 [2] [d]) and until an accounting by the surviving partner, there is no specific personal property or money which belongs to the estate (Matter of Schwartzenberg, 99 AD2d 969). However, in the normal course of events it would appear probable to anticipate a winding up of the partnership affairs and a receipt of the estate’s equitable share of the partnership assets. Certainly the son’s claiming of a $261,834 deduction for commissions on the estate tax return, which commissions are apparently based in part on partnership assets, cannot be deemed to have been so casual an estimate. In addition, while it is true unsold realty is not commissionable, real estate belonging to a partnership is converted into personalty (Matter of Havemeyer, 17 NY2d 216).
In any event, the Bennett Commission reports make it clear that the practice under former Surrogate’s Court Act § 285-c, the predecessor to present SCPA 2310, involved the payment of a "simple draw and the Surrogate makes no determination that the commissions have actually been earned. Therefore, there is always the possibility that if the executor should die or resign, he or his estate will be required to pay back part of the commissions advanced. Thus the provision for the bond” (Second Report of Temp St Commn on Law of Estates, 1963 NY Legis Doc No. 19, at 375). Accordingly, the application for the payment of $130,000 to the daughter as coexecutor as a payment on account of commissions is granted subject to the filing of an adequate bond.